25785.   CALFEE *v.* JONES.

DECIDED NOVEMBER 6, 1936.

*G. B. Cowart,* for plaintiff in error.   *Farr & Mitchell,* contra.
JENKINS, P. J.   The State legislature, subject to any limitation by the constitution and to the proper exercise of eminent domain over private land, has the power and control over the laying out, construction, maintenance, and closing of roads, streets,

and other public highways. It may exercise this power through its own agencies, or delegate it to inferior bodies. "Prior to the act of 1919 (Ga. L. 1919, pp. 242 et seq.) [Code of 1933, §§ 95-1501 to 95-1725 inclusive], by which the State highway commission was reorganized, there were two ways of laying out and building public highways in this State. One was the county method, which is defined in the Civil Code [1910], §§ 640 et seq. [1933, §§ 95-201 et seq.] The other was the municipal method." But by the highway department reorganization act, the legislature created a new "system of locating and building what are denominated 'State-aid roads,'" which is entirely different from the machinery for establishing public roads by counties; so that "the county method plan does not apply to the State method of designating or locating and building State-aid roads," as provided by the Code, §§ 95-201 et seq. *Lee County* v. *Smithville*, 154 *Ga.* 550, 555-559 (115 S. E. 107). The legislature has expressly vested the State Highway Department, not only with the sole power to create, construct, and maintain all State-aid roads, but with the sole "right to resurvey and *relocate* in their entirety any or all of said roads." §§ 95-1504, 95-1708, 95-1721. Consequently, since determination as to the relocation of a State-aid road, and the consequent closing or abandonment of the old right of way, rests solely with the State Highway Department, and not with county officials under the procedure of §§ 95-201 et seq., or 95-801 et seq., those sections, requiring citation, advertisement, notice, and other designated steps before the ordinary or other county officials, in order legally to effect "the discontinuance of an old road" (§ 95-207), are not applicable to the discontinuance or abandonment of a State-aid road by the State Highway Department.

■ After a State-aid road has been closed or abandoned by the State Highway Department, the title to the road and the rights therein of the public at large will depend upon the status of the property before and after such abandonment. If the legal title was previously vested in the highway department by deed or condemnation, the title so remains, notwithstanding a mere abandonment, subject to any rights of the public which it may have acquired or acquire by an actual use of the roadway. If no legal title was previously vested in the State, but the highway was merely a part

of the State-aid system by virtue of an express or implied dedication or easement in the public, and an acceptance thereof and control of the road by the highway department, the county authorities may, if they so desire and the highway department does not object, take over the right of way, not only by the method stated in the statutes, but independently of the statutory procedure, under the power of the county by virtue of the former dedication to the public use. See *Lee County* v. *Smithville,* supra. If, however, after an abandonment by the State Highway Department of a State-aid road, the county officials likewise expressly or impliedly abandon the road by refusing or failing to take over and operate it as a county public road, it is unnecessary to follow the procedure of the Code, § 95-207, in order to make effective the abandonment by the county; since, the county never having taken over the road, it is needless to apply to county officials for its "discontinuance." After an abandonment both by the State Highway Department and by county officials, if no deed to the land has been made to the department or to the county, any rights of the public to a continued use of the road would be determinable by the statutes and general law relating to dedication and easement.

■ "If the owner of lands, either expressly or by his acts, shall dedicate the same to public use, and the same shall be used for such a length of time that the public accommodation or private rights might be materially affected by an interruption of the enjoyment, he may not afterwards appropriate it to private purposes." Code, § 85-410. Such a title or easement, once vested in the public, is not lost by neglect of the governing or controlling officials, but may be lost only by a legal abandonment under the statutes and general law, not by such officials alone, but also by the public which has used and may continue to use the land. See *Kirkland* v. *Pittman,* 122 *Ga.* 256, 260 (50 S. E. 117) ; *Mayor &c. of Macon* v. *Franklin,* 12 *Ga.* 239. "An easement may be lost by abandonment, or forfeited by nonuser, if the abandonment or nonuser shall continue for a term sufficient to raise the presumption of release or abandonment." This generally follows the usual prescriptive periods. § 85-1403; *Kelsoe* v. *Oglethorpe,* 120 *Ga.* 951, 955 (48 S. E. 366, 102 Am. St. R. 138) ; *Mayor &c. of Savannah* v. *Bartow Investment Co.,* 137 *Ga.* 198, 204 (72 S. E. 1095) ; *Mayor &c. of Savannah* v. *Barnes,* 148 *Ga.* 317, 320 (96

S. E. 625, 3 A. L. R. 419). "The evidence to establish a forfeiture of an easement by abandonment or nonuser must be decisive and unequivocal. Abandonment is a mixed question of law and fact." Where the testimony is in dispute as to the facts indicating such an abandonment, the determination of the true facts, to which the law of abandonment given in charge by the court is to be applied, is for the jury. *Gaston* v. *Gainesville &c. Ry. Co.,* 120 *Ga.* 516 (2, 3), 519 (48 S. E. 188); *Mayor &c. of Savannah* v. *Barlow Investment Co.,* supra.

In the instant action for personal injuries, caused in 1934, by the running of an automobile into a wire fence placed across an alleged public highway by the defendant, through whose land the road ran, the evidence was undisputed that before 1925 this road formed part of the State highway system; that in that year the highway was straightened and changed, and this road was abandoned by the State authorities; that the county commissioners of roads and revenues never took over the road, but on the contrary, as shown by their 1922 minutes, officially determined to quitclaim it' to the former owner, the defendant's predecessor in title, if he would deed them other land for the new road; that in deeds made in 1925, to the exclusion of which from evidence the defendant excepts, the county conveyed the roadway in question back to the former owner, and it was recited that this road was "now abandoned as a public road;" and that, so far as the State and the county were concerned, they abandoned all control and use of the road after 1925. The evidence showed that the county never had a deed to the roadway; and indicated that, so far as either the State or the county was concerned, any title, easement, or right depended only upon such prior dedication and use of the property as may have existed, rather than upon any written instrument or any express dedication. The evidence failed to show how long before the abandonment of the road by the State and the county in 1925, any implied dedication to public use or easement by actual public use began or continued. The evidence was in conflict as to what use of the road by the general public occurred after the 1925 abandonment; some testimony being to the effect that the road had not been used by the public, and that parts of the road had been closed by ties or an embankment so as to prevent passage; and some testimony indicating that the road had

been in quite constant public use. There was also evidence that since the deed to the roadway was made by the county to the defendant's predecessor in title, the road had been "plowed to some extent," and the fence which caused the injuries was erected about a year before the accident. Under all of this testimony, since the evidence failed to show any deed or any legal express or implied dedication of the road to the highway commission or department, or to the county, or to the general public, and failed to show any easement, by proving the necessary prescriptive period of use before the official abandonment, and since the evidence positively showed the abandonment by the State and county officials (even if their prior legal rights had been properly shown), a verdict for the defendant was demanded, and it was error, on the general grounds, to refuse a new trial after the rendition of a verdict for the plaintiff for $202.50.

■ Under the preceding rulings, it was error to exclude from evidence the original deed, made in 1925, from the county board of commissioners of roads and revenues to the defendant's predecessor in title, and the subsequent deed from him to the defendant, conveying the road in question and reciting that it had been abandoned; since, even though the county never held any title to the property either by deed, other instrument of transfer or dedication from the owner, or any title from the State Highway Department, and the deed from the county was not effective to transfer title to the owner, the deeds were material to show both an actual abandonment or refusal to take possession of the road by the county officials and color of title, under which the defendant could claim adverse possession for seven years. Code, § 85-407. Even though a deed is executed by a county officer without authority, and is therefore void, it may, if accepted in good faith as valid, afford good color of title. *Bennett* v. *Walker*, 64 *Ga.* 326 (3), 332.

■ For the foregoing reasons, it was error for the court to instruct the jury: "It further appears from the evidence that the county authorities of this county have not taken the necessary and appropriate action which is necessary to discontinue or abandon this particular stretch of highway as a public road;" and "the court therefore charges you, gentlemen, that the road in question is a public road in this county, therefore that issue is eliminated by the ruling of this court."

■ Since the petition claimed generally $5000 damages "as personal injury," and expressly referred to the causing to petitioner of "much pain and suffering" in the described parts of her body, as well as "much pain and suffering," "nervous breakdown," and "nervousness," the court did not err, after the conclusion of argument for the defendant, in allowing an amendment adding the words, "and pain and suffering," after the words, "as personal injury," in the general claim of damages, over the objection that damages for pain and suffering were not originally prayed, and over the defendant's claim of surprise and motion for a continuance, even if the amendment had been necessary. Nor did the court err in not declaring a mistrial on the same grounds.

■ There is no merit in the remaining exception, that "the court refused to permit counsel [for the defendant] to interrogate plaintiff's witness . . with reference to his general reputation in the community and his reputation for veracity," even if this ground sufficiently· stated the excluded testimony so as to be of such completeness as to authorize consideration. ·

*Judgment reversed. Stephens and Sutton, JJ., concur.*