34997.   ARCHER *v.* JOHNSON.

DECIDED JUNE 25, 1954—REHEARING DENIED JULY 16, 1954.

*Maddox & Maddox,* for plaintiff in error.

*Parker, Clary & Kent,* contra.

QUILLIAN, J. As early as the year 1855 Justice Lumpkin in the case of *Boyd* v. *State,* 17 *Ga.* 194 (8) laid the cornerstone of the doctrine that it was to the public interest that law-enforcement officers while in the discharge of their duty be given sufficient latitude of action and ample protection. In a pretty phrase he denominates them "the ministers of justice." In the body of the opinion at page 204 it is said: "Ministers of justice, while in the execution of their offices, are under the peculiar protection of the law—a protection founded in wisdom and in every principle of political equity; for without it the public tranquillity can not possibly be maintained or private property secured; nor, in the ordinary course of things, will offenders of any kind be amenable to justice."

The principle has for nearly a century since the *Boyd* case been steadily formed, adhered to by the General Assembly and courts. The deference and loyalty of public, bench, and bar to the brave men who protect us against lawlessness is patriotic in its nature. We all recognize that the ends of justice demand that violators of our laws be apprehended, and that it is often necessary for the officer to travel at a greater speed than is permitted to others

in order to overtake and bring a fleeing criminal to the bar of justice. For this very purpose was enacted Code (Ann. Supp.) § 68-301 (d) prior to the recent enactment of the traffic code. The first subhead reads: "(d) The speed limitations set forth in this section shall not apply to authorized emergency vehicles when responding to emergency calls or when in immediate pursuit of an actual or suspected violator of the laws of this State: Provided, however, that all such emergency vehicles shall observe the limitations hereinabove imposed at all times other than those specified in this paragraph and this provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the public streets and highways, nor shall it protect the driver of any emergency vehicle from the consequences of reckless disregard of the safety of others."

This Code section is but a modern expression of the doctrine expressed in the *Boyd* case that arresting officers, "the ministers of justice," have a broad scope of authority and freedom of action while in the performance of their very responsible functions.

We now refer to another doctrine of our law. That doctrine is that the protection of the person and property of the citizen is the paramount purpose of government. "Protection to person and property is the paramount duty of government and shall be impartial and complete." Constitution of the State of Georgia of 1945, Art. I, Sec. I, Par. II (Code § 2-102). In this momentous declaration of our bill of rights is laid the cornerstone of the Commonwealth itself. The right to use the public thoroughfares with reasonable safety is an important liberty to be enjoyed by the citizen. The protection of his person and automobile while exercising this privilege against anyone, even an officer of the law who fails to use reasonable care is guaranteed to him by this constitutional provision.

Code § 68-301 (d), read as a whole, recognizes the first doctrine of law referred to in this opinion and it is desirable that the officers of the law not be deterred in overtaking the culprit or suspect by requiring him to abide by the speed limits fixed by statute.

The last portion of the Code sections enjoins upon him the

corresponding duty of exercising that privilege in the following language: "and this provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the public streets and highways, nor shall it protect the driver of any emergency vehicle from the consequences of reckless disregard of the safety of others."

Under the law as it existed prior to the passage of the Uniform Traffic Code (Ga. L. 1953, Nov.-Dec. Sess., p. 556), the sheriff who in the line of duty responded to an emergency call and was in pursuit of an actual or suspected violator of the law, had the right to drive at such speed as the circumstances demanded, even in excess of the speed limit fixed by the statute, provided he, in so doing, exercised due regard for the safety of other persons on the public thoroughfare over which he drove, and not with reckless disregard of the safety of others. Code § 68-301 as amended by Ga. L. 1939, pp. 295, 296, 302, and Ga. L. 1950, p. 418.

The trend of our jurisprudence from that time has been to give all latitude and protection possible to the law-enforcement officers in the discharge of their duties. Yet, while it is most desirable and patently to the public interest that the officers of the law proceed with much promptness and speed in overtaking and apprehending the violators of our laws, and that they need not be answerable for simply exceeding the speed limits fixed by statute, yet the life and limb of innocent citizens must not be unreasonably endangered in the process by the failure of even an officer of the law.

Where a sheriff drove through a densely populated street at 80 to 100 miles per hour, and saw or could have seen traveling in the same direction a truck, and continued to travel at such speed in following the truck with the anticipation of passing it, even though the sheriff's automobile was equipped with a siren and blinker lights all in full operation, it was a question for the jury as to whether he was operating his automobile, though on an emergency mission or in pursuit of a real or suspected culprit, with due regard of the safety of the persons on the public way over which he traveled, and not in reckless disregard of the safety of others.

If, on account of either a curve or a proclivity in the highway, the defendant could not see the truck ahead for a sufficient distance to enable him to stop, it was certainly a question for the jury as to whether he obeyed the statute, or whether he acted with reckless disregard for the safety of others.

The legislature intended by the act to do two things: first, to give the drivers of certain authorized emergency vehicles the right to travel when occasion required it at a speed in excess of the limit fixed by the statute applicable to motor vehicles generally; secondly, to protect the public on highways, and even those riding in the vehicles thus favored, from reckless disregard of their safety by the drivers of these privileged vehicles.

That the public is benefited by much latitude and freedom of action being given the operator of authorized emergency vehicles is obvious, and the desirability of preserving the safety of the public by the provisions of the statute regulating the manner in which that freedom of action is to be exercised is equally as apparent.

It is desirable that the ambulance reach the stricken patient, that the fire engine proceed to and quench the fire, that the officer overtake and apprehend the criminal, but it is equally as important that innocent persons, whether or not connected with the emergency to be met, not be maimed or killed in the operation.

Conceding that a public officer does assume the ordinary risk of his employment, it does not appear from the evidence or the plaintiff's pleadings, that it was a duty of the plaintiff, as deputy sheriff to ride in an automobile on the particular highway involved in this case in approaching or overtaking a truck at the rate of speed of 80 miles or more per hour or when the automobile in which he was a passenger could not be brought to a stop before skidding 182 feet on dry pavement. Consequently, this court cannot hold that the evidence demanded a finding that the plaintiff had assumed the risk to which he was exposed on the occasion when he was injured.

*Judgment reversed. Felton, C. J., and Carlisle, J., concur. Nichols, J., disqualified.*