A96A1574. WILSON v. CITY OF ATLANTA et al.
(476 SE2d 892)

SMITH, Judge.

Michelle Wilson brought this action to recover for personal injuries she sustained when the automobile in which she was a passenger was struck by a vehicle being driven by Timothy Lucas. Alleging that the collision was a proximate result of the pursuit of Lucas by Officer M. M. McCain of the City of Atlanta Police Department, Wilson named McCain and the City of Atlanta as defendants, as well as Lucas. She amended her complaint to allege that the actions of McCain and the City constituted a nuisance and also violated 42 USC § 1983. The trial court dismissed the § 1983 claim in response to the motion to dismiss filed by McCain and the City but denied their motion to dismiss the negligence and nuisance claims. Subsequently, however, the trial court granted summary judgment to the defendants on those claims. Wilson appeals the grant of summary judgment to McCain and the City, contending that issues of fact exist as to

whether McCain was negligent in the performance of his duties and whether a nuisance was created and maintained by the City.[1]

We must examine McCain's pursuit of Lucas's vehicle in light of the Supreme Court's ruling in *Mixon v. City of Warner Robins*, 264 Ga. 385 (444 SE2d 761) (1994). There, plaintiff sued an individual police officer, as well as the City and the criminal suspect who collided with plaintiff's decedent while being pursued by the officer. Evidence was presented that the officer saw the suspect commit a minor traffic violation. When the officer began to pursue the suspect, the suspect did not "accede to the show of authority" and accelerated, ultimately reaching 55-60 mph and colliding with plaintiff's decedent. Id. at 390. The evidence in *Mixon* also showed that the officer was " 'right up on [the suspect's] bumper' " mere seconds before the collision. Id.

In its review of OCGA § 40-6-6 (d), the Supreme Court in *Mixon* embarked upon a lengthy discussion concerning the tension between law enforcement's professional duty to pursue criminal suspects and the corresponding duty to drive with due regard for the safety of other drivers. At the time of the collision in *Mixon*, OCGA § 40-6-6 (d) stated that a driver of an authorized emergency vehicle was not relieved from the duty to drive with due regard for the safety of all persons.[2] The Supreme Court identified the purpose of that statute: "to protect the public on highways . . . from reckless disregard of their safety by the drivers of pursuing law enforcement vehicles."

---

[1] Although Wilson argues in her brief that the trial court erroneously dismissed her § 1983 claim, she failed to designate the order dismissing her § 1983 claim in her notice of appeal. In fact, she *specifically* recited in her notice of appeal and enumeration of error that the trial court erred in granting summary judgment and made no mention of the dismissal. Under these circumstances, even though she argues against the dismissal in her brief, Wilson waived this issue on appeal. "Matters not enumerated as error will not be considered on appeal. An enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration." (Citations and punctuation omitted.) *Sentry Ins. v. Majeed*, 194 Ga. App. 276, 277 (390 SE2d 269), aff'd, 260 Ga. 203 (391 SE2d 649) (1990). We therefore do not consider Wilson's contentions regarding this claim.

[2] After *Mixon* was decided, and after the date of the collision at issue here, the legislature modified OCGA § 40-6-6 (d). That statute now specifically incorporates its purpose of discouraging reckless conduct by law enforcement officers in pursuit of fleeing suspects. Subsection (d) (1) still provides that an emergency vehicle driver must "drive with due regard for the safety of all persons." Newly added subsection (2) recites: "When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation."

(Citation and punctuation omitted.) Id. at 387. The Court held that "if a vehicular pursuit is undertaken or performed without the requisite due regard for the safety of all persons and an injury occurs as the consequence, the officer can be held civilly liable." Id. at 388 (1). Whether the officer in *Mixon* drove with requisite "due regard" for the public's safety sufficient to authorize the grant of summary judgment depended on whether the evidence "demanded a finding that [he] properly balanced the risk to the safety of other drivers" during his pursuit of the criminal suspect. Id. at 389 (2). Based on the evidence in *Mixon* that the officer engaged in a high-speed pursuit in a residential area after the suspect committed only a minor traffic offense, the Supreme Court concluded that a jury would be authorized to find that the officer "failed to balance the risk to the safety of other drivers . . . [and] failed to act in accordance with his duty under OCGA § 40-6-6 (d)." Id. at 391.

The Supreme Court distinguished the facts in *Mixon* from the "plain and undisputed" facts in *Sammor v. Mayor &c. of Savannah*, 176 Ga. App. 176 (335 SE2d 434) (1985), a case in which summary judgment was appropriately granted to the police officer. In *Sammor*, the officer saw a vehicle driving unreasonably fast in city traffic and initiated pursuit by activating his emergency lights and siren, notifying headquarters about the incident, and following the vehicle. According to the Supreme Court, "[u]nder the undisputed evidence in *Sammor*, the risk of injury to other drivers from the speeding vehicle was *already* present before the officer determined to initiate pursuit in an attempt to ameliorate that *existing* risk. Thus, the officer's 'pursuit' did not heighten any risk to other drivers and, as a matter of law, could not be a proximate cause of the ensuing collision." (Emphasis in original.) *Mixon*, supra at 390.

On motion for summary judgment in this case, McCain stated in his affidavit that on May 6, 1993, at approximately 5:15 p.m., he heard a "fight, snatch thief" report over his radio giving the license number and description of the occupants of the vehicle involved in the incident. About twenty minutes later, he observed an automobile with that license number and two suspects matching the description of the suspects given in the earlier report. After McCain followed the vehicle at a normal rate of speed along three different streets, the vehicle "dramatically increased" its speed as it approached an intersection. McCain radioed an emergency call,[3] turned on his blue lights and sirens, and pursued the suspect vehicle.

During the chase, McCain saw the vehicle disregard red lights

---

[3] According to McCain's police report, a helicopter unit and other marked units were called as backups.

and a stop sign and drive for a short time the wrong way down a one way street. McCain stated that during this portion of the pursuit, the traffic was "medium to light," and he slowed his car as he passed through intersections. When McCain saw the traffic become "medium to heavy," he "discontinued the high-speed pursuit, resumed a normal speed and maintained visual contact with the suspects." Also according to McCain, he "called in the streets and directions as often as possible while maintaining visual contact with the suspects." After abandoning the high-speed pursuit and resuming a normal speed, McCain saw the Lucas vehicle swerve left of the double yellow centerline and crash head on into the car in which Wilson was a passenger. Based on the foregoing, McCain stated that "[a]t all times during [his] pursuit of the Lucas . . . vehicle, [he] balanced the risk to the safety of other drivers and acted accordingly" and added that he never followed the suspects so closely that his "vehicle was right up on the suspects' vehicle's bumper." Wilson presented no evidence refuting McCain's testimony.

The facts in this case are more akin to those in *Sammor* than to those in *Mixon*. The evidence did not reveal that McCain, like the officer in *Mixon*, violated the purpose of OCGA § 40-6-6 (d) by "recklessly disregarding" the safety of the driving public. In *Mixon*, the risk to the public posed by the suspect's slowly driving through a stop sign was not appreciable. We do note that the suspect vehicle seen by McCain may not have been speeding initially, as was the vehicle in *Sammor*. Nonetheless, as in *Sammor*, a heightened risk to the public was *already* present when McCain decided to initiate pursuit.

In this case, only minutes before the pursuit began, the occupants of the vehicle were involved in violent criminal activity; despite the fact that McCain did not actually see that activity, McCain had received fairly positive identification of the vehicle and a description of two of its occupants shortly before he observed the vehicle. In an attempt to ameliorate the already present risk to the public of further criminal activity, and all the while balancing the risk to other drivers, McCain initiated a pursuit that did not escalate into a high-speed pursuit for several blocks. When the suspect vehicle did "dramatically increase" its speed, McCain, like the officer in *Sammor*, activated his blue lights and sirens and maintained contact with the police department. Unlike the officer in *Mixon*, he did not follow the vehicle so close as to be "on its bumper" but instead slowed at intersections and at all times monitored the traffic conditions. Most importantly, when he determined that the risk to the driving public became too great, he discontinued the high-speed chase and resumed a normal speed, unlike the officer in *Mixon*, who followed closely behind the suspect vehicle until seconds before the crash. *Mixon*, supra at 390.

In contrast to *Mixon*, where no evidence showed that the officer balanced the risks to the public and where a fair inference from the evidence could be drawn that he drove with reckless disregard for the safety of others, evidence was presented in this case supporting McCain's statement that he balanced the risks involved in his pursuit of the Lucas vehicle. Furthermore, under the evidence presented, McCain did not violate the principle of OCGA § 40-6-6 (d), recognized in *Mixon*, by driving in reckless disregard for the safety of the driving public. To survive summary judgment, it was Wilson's duty as respondent to point to or come forward with facts showing that McCain failed to properly balance the risks inherent in the pursuit of a fleeing suspect and that he violated OCGA § 40-6-6 (d). *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). This Wilson failed to do. The evidence presented therefore reveals no basis for imposition of liability upon McCain, and summary judgment in his favor was appropriately granted.

As for Wilson's nuisance claim against the City, because McCain was not liable, no basis of liability exists. Moreover, even if McCain had been negligent, Wilson has not pointed to evidence on which a nuisance claim may be based, namely that the City maintained a dangerous condition on a regular basis over a period of time and took no action to correct the condition after learning of it. See *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (2) (256 SE2d 782) (1979).[4] It follows that no basis for imposition of liability exists against the City, as well as against McCain.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 10, 1996.

*William R. Hurst*, for appellant.
*Edith M. Shine*, for appellees.

---

[4] Wilson mentions in her brief that the City refused to produce requested "data to show the incidence of accidents and injuries resulting from police chases." This allegation is unsupported by the record. Although the City did initially seek a protective order asking the court to toll its responses to Wilson's discovery requests, the trial court ultimately ordered the City to respond to those requests.