A01A0334. STROZZO et al. v. COFFEE BLUFF MARINA PROPERTY.
A01A0335. ROSSO CORSA ENTERPRISES, INC. v. COFFEE BLUFF MARINE RESCUE SQUADRON OF AMERICA, NO. 2A.
(550 SE2d 122)

MILLER, Judge.
Rosso Corsa Enterprises, Inc., grantee under a trustee's deed after foreclosure, filed this quia timet petition under OCGA § 23-3-60 to establish itself as the fee simple title holder to real property commonly known as Coffee Bluff Marina, fronting on the Forrest River in Chatham County. Tony Strozzo and other property owners in the so-called Town of Rosedew asserted an express easement and also claimed a general right-of-way, alleging the land had been dedicated and accepted as a public park. Coffee Bluff Marine Rescue Squadron of America, No. 2A (MRS) also responded, claiming a prescriptive easement to a portion of the property.

The case was referred to a special master, who considered cross-motions for summary judgment and recommended that summary judgment be granted to Rosso Corsa as against the residents because as property owners they abandoned any express easement and as members of the public at large they acquired no easement. The special master further recommended that fee simple title to the entire property be established in Rosso Corsa but subject to a prescriptive easement in favor of MRS to access, use, and maintain improvements

it made which exceeded the scope of the original permissive use granted to it by Mrs. Phillip Falligant, Rosso Corsa's predecessor in title. The trial court adopted the special master's report and entered summary judgment in accordance with its recommendations. In Case No. A01A0334, the residents appeal the grant of summary judgment in favor of Rosso Corsa, and in Case No. A01A0335, Rosso Corsa appeals the grant of summary judgment establishing a prescriptive easement in favor of the MRS.[1]

*Case No. A01A0334*

1. Appellants, as Falligant Subdivision landowners and also as members of the public at large, enumerate the grant of summary judgment against their claims to an easement. When reviewing the grant or denial of summary judgment, this Court conducts a de novo review of the law and the evidence, construing the evidence and all reasonable deductions therefrom in favor of the nonmovant.[2] Viewed in this light, the record shows the following.

According to a copy of the recorded 1887 plat of the Falligant Subdivision of the Coffee Bluff Plantation in the Town of Rosedew, Chatham County, Dr. L. A. Falligant (the common owner in appellant-residents' chains of title) set aside Park Place East, Rosedew Park, and Park Place West from the numbered lots of the subdivision. Park Place East and West are narrow rectangular strips 30 feet wide and running approximately 480 feet south from the edge of Back Street to the low water mark of the river. Rosedew Park is approximately 80 feet wide and 480 feet long. Rosso Corsa claims only the outermost 20 feet on each side of Rosedew Park because in 1955, Phillip L. Falligant deeded to Chatham County a right-of-way to the middle 40 feet for an extension of Coffee Bluff Road, and the City of Savannah has since annexed the property.

It is undisputed that the 1887 plat is referred to in subsequent deeds to various lots in the Falligant Subdivision, including Rosso Corsa's deed from the trustee. There is also evidence that, while the park was originally intended exclusively for Rosedew residents, the general public has used the bluff and beach for recreational purposes, at least since the 1920s. Either the county or the city once built a boat ramp at the water's edge, but since at least 1976 that

---

[1] Notwithstanding the express language of the Georgia Constitution of 1983, Art. VI, Sec. VI, Par. III (1) ("Cases involving title to land") and Par. III (2) ("All equity cases"), and over the dissent of Chief Justice Benham, Presiding Justice Fletcher, and Justice Carley, a majority of the Supreme Court of Georgia transferred these cases to the Court of Appeals. Compare *Childs v. Sammons*, 272 Ga. 737 (534 SE2d 409) (2000) (petition to quiet title).

[2] *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997) (whole court).

ramp was condemned and access to it blocked by a fence. Only remnants of the paving for the extension of Coffee Bluff Road remain. Since 1972, a chain-link fence along the northern portion blocks all entrance to the property except an opening to a privately operated marina, erected by Rosso Corsa's predecessor in title. The property is not posted as a public park nor maintained by any local government.

(a) *Members of the public at large.* "After an owner dedicates land to public use either expressly or by his actions and the land is used by the public for such a length of time that accommodation of the public or private rights may be materially affected by interruption of the right to use such land, the owner may not afterwards appropriate the land to private purposes."[3] Nevertheless, an easement in favor of the public may be voluntarily abandoned.[4] The time sufficient to raise the presumption of abandonment of land accepted for public use generally follows the 20-year prescriptive period.[5] While there is evidence that a small portion of the public has used the so-called park for recreational purposes since a " 'time whereof the memory of man runneth not to the contrary[,]' "[6] yet the evidence is undisputed that any acceptance by the public at large has been abandoned because for more than 20 years the governing authority has fenced and locked the access to the condemned and unsafe public ramp rather than repair or maintain that ramp or the park itself. The trial court correctly granted summary judgment to Rosso Corsa on appellants' claims based on their being members of the public at large.

(b) *Assigns of Dr. Falligant.* "It is well established that when property is subdivided and a conveyance is made according to a recorded plat, the purchaser acquires an easement in areas set aside for the purchaser's use."[7] The recorded plat here is evidence that Rosedew Park and its adjacent areas were expressly dedicated to the subdivision property owners.[8] Mere nonuse of an easement acquired by deed, for a period however long, will not amount to an abandonment.[9] So any current property owner whose deed incorporates the 1887 plat by reference has an express easement in the areas set aside,[10] namely, Park Place East, Rosedew Park, and Park Place

---

[3] OCGA § 44-5-230.

[4] *Mayor &c. of Savannah v. Barnes*, 148 Ga. 317, 321 (96 SE 625) (1918); OCGA § 44-9-6.

[5] *Calfee v. Jones*, 54 Ga. App. 481, 483 (3) (188 SE 307) (1936); OCGA § 44-5-163.

[6] This is the common law period for prescription. *Seaboard Air-Line R. v. Sikes*, 4 Ga. App. 7, 10 (3) (60 SE 868) (1908).

[7] (Citations omitted.) *Sadler v. First Nat. Bank &c.*, 267 Ga. 122 (1) (475 SE2d 643) (1996).

[8] *Northpark Assoc. No. 2 v. Homart Dev. Co.*, 262 Ga. 138, 139 (1) (414 SE2d 214) (1992).

[9] *Mayor &c. of Savannah*, supra, 148 Ga. at 321. Accord *Tietjen v. Meldrim*, 169 Ga. 678, 695 (2) (151 SE 349) (1930).

[10] *Sadler*, supra, 267 Ga. at 122-123 (1).

West, regardless of whether there was an acceptance of the presumed dedication by the governing authority or by the public.[11] There is, in our view, no evidence other than mere nonuse that any current beneficiary of the easement demonstrated the requisite intent to abandon that interest.[12] Consequently, the trial court erred in granting summary judgment against the right-of-way claims of any appellant who is an assignee in the chain of title from Dr. Falligant or his heirs.

## Case No. A01A0335

2. Rosso Corsa enumerates the trial court's conclusion that MRS acquired a prescriptive easement in Park Place East and the eastern portion of Rosedew Park, arguing that all possession and use were permissive.

It is quite true that permissive possession cannot be the foundation of a prescription until an adverse claim and *actual notice* are given to the other party.[13] Pretermitting whether any material fact questions exist under this assignment of error,[14] we nevertheless affirm the grant of summary judgment to MRS because the express parol license Mrs. Falligant granted MRS subsequently became an easement due to the expenses MRS incurred. "A parol license to use another's land is revocable at any time if its revocation does no harm to the person to whom it [was] granted. A parol license is *not* revocable when the licensee has acted pursuant thereto and in so doing has incurred expense; in such case, it becomes an easement running with the land."[15]

It is undisputed that in 1960 Mrs. Falligant "graciously agreed to permit . . ." MRS to conduct its marine rescue operations from her riverfront property and to erect a gear shack identified in a building plan so long as her property taxes would not be increased and her tenant would not be disturbed. That same year, MRS built the envisioned one-story concrete block gear shack of approximately 900 square feet. In 1961, MRS constructed a dock and hoist on the premises, which are still in use today. Mrs. Falligant died or disposed of the property in 1968 or 1969. In 1974, MRS added a barbeque pit and patio to the rear of the gear shack, and in 1980 a metal canopy over

[11] *Stanfield v. Brewton*, 228 Ga. 92, 94-95 (1) (a), (b) (184 SE2d 352) (1971).

[12] See *Sadler*, supra, 267 Ga. at 123 (2).

[13] OCGA § 44-5-161 (b). Accord *Rucker v. Rucker*, 136 Ga. 830 (2) (72 SE 241) (1911).

[14] For example, it would be for the jury to determine whether, in the first instance, MRS exceeded the scope of Mrs. Falligant's permission to use the land for marine rescue operations. Even if the jury were to find that MRS exceeded that initial permissive scope by erecting the dock and boat hoist, then the question would remain whether MRS ever gave actual notice of an adverse claim and subsequently held possession for 20 years.

[15] (Emphasis supplied.) OCGA § 44-9-4.

the patio area was added. In 1989, MRS added a bulkhead to the dock and landscaped the grounds. Access to the dock is limited by a locked chain-link fence, to which members of MRS have a key.

The outermost limits of Mrs. Falligant's generosity may be ambiguous at this remote time, but it is undisputed that she expressly consented to the use of her land for marine rescue operations and expressly permitted the erection of the gear shack. This was not a mere license to walk in a park, to use a roadway, to fish in the waters of another, or the like, but was a license to construct something permanent and enduring attended with expense.[16] "If the enjoyment of [a parol license] must be preceded necessarily by the expenditure of money, and the grantee has made improvements or invested capital in consequence of it, it becomes an agreement for . . . valuable consideration, and he a purchaser for value."[17]

As it is undisputed that MRS expended capital by making an improvement to Mrs. Falligant's property acting in reliance upon her parol license, MRS became a purchaser for value, and the parol license became an easement running with the land. The trial court correctly granted summary judgment to MRS on this record.

*Judgment affirmed in Case No. A01A0335. Judgment affirmed in part and reversed in part in Case No. A01A0334. Johnson, P. J., and Eldridge, J., concur. Andrews, P. J., not participating.*

DECIDED JUNE 12, 2001 —
RECONSIDERATION DENIED JUNE 27, 2001 —

*Cletus W. Bergen II*, for appellants (case no. A01A0334).
*Buchsbaum & Lowe, Alan S. Lowe, James W. Krembs*, for appellant (case no. A01A0335).
*Todd E. Schwartz, C. James McCallar, Jr.*, for appellees.

---

[16] *Sheffield v. Collier*, 3 Ga. 82, 86 (1847).
[17] *Mayor &c. of Macon v. Franklin*, 12 Ga. 239, 243 (1) (1852). Accord *Mathis v. Holcomb*, 215 Ga. 488-489 (1) (111 SE2d 50) (1959).