### A01A2386. CITY OF WINDER v. McDOUGALD et al.
(562 SE2d 826)

MILLER, Judge.

The City of Winder appeals from the trial court's denial of its motion for summary judgment. On appeal Winder contends that the trial court erred by (1) failing to strike plaintiffs' expert affidavit, and (2) specifying the wrong legal standard on summary judgment and denying summary judgment to Winder. We discern no error and affirm.

Viewed in the light most favorable to the plaintiffs, the evidence reveals that at 3:00 a.m. on June 21, 1999, Ashley McDougald snuck out of her parents' home and took their car without permission. Ashley, who was 14 years old and did not have a license, drove without her headlights on and passed a police officer. The officer followed Ashley, and when Ashley did not turn on her headlights, the officer turned on his blue lights and siren.

Instead of pulling over, Ashley attempted to flee by accelerating down the road. The officer chased her, and Ashley sped through a parking lot, where she damaged her parents' car and nearly collided with two parked cars. Ashley then drove on the wrong side of the road and sped up to 70 mph with the police officer still in pursuit two to three car lengths behind. When another officer heard over the radio that the pursuing officer was traveling at 70 mph, he told the pursuing officer to back off and terminate the pursuit. The pursuing officer continued the pursuit nevertheless. As the pursuing officer and Ashley approached a curve in the road, the pursuing officer began to slow down because he did not believe that he could negotiate the curve at 70 mph. Ashley sped through the curve and was killed when she crashed into a utility pole.

The McDougalds sued the pursuing officer and the City of Winder for the death of their daughter. The officer and Winder moved for summary judgment. In response, the McDougalds submitted an affidavit from an expert in police training and procedures, which stated that the pursuing officer had violated several national and Winder police policies in his continued pursuit of Ashley. The expert contended that the accident that resulted in Ashley's death could have been prevented had proper procedures been followed. Winder moved to strike the affidavit because the various national policies and some of the other documents identified in the affidavit were not attached to the affidavit. Winder admits, however, that several of the documents, including the Winder policies on Vehicle Pursuit Actions, were part of the record before the court. The trial court granted summary judgment to the pursuing officer, but determined that genuine issues of material fact remained regarding whether or not the pursuing officer "acted negligently in his pursuit of the decedent's vehicle." The trial court stated that Winder could be liable to the extent that the officer's negligence was covered by insurance.

1. Winder contends that the trial court erred by failing to grant its motion to strike the McDougalds' expert affidavit. More specifically, Winder argues that the affidavit should not have been considered because some of the national policies and other documents that the expert relied upon were not attached to the affidavit.

Although the record contains no ruling on Winder's motion to strike, we will presume that the trial court reviewed all of the evidence before it in deciding the motion for summary judgment. See *E. H. Crump Co. &c. v. Millar*, 200 Ga. App. 598, 600 (2) (409 SE2d 235) (1991). As Winder admits, several of the documents identified in the affidavit are matters of record. "[A]n affidavit need not attach material upon which it is based if that material is part of the record in the case and is before the trial court, provided that the affidavit clearly identifies the record matter upon which it is based." (Citation

and punctuation omitted.) *Augustine v. Frame*, 206 Ga. App. 348, 349 (1) (425 SE2d 296) (1992). To the extent that there are portions of the affidavit that rely on documents that are not a part of the record, we will not consider those portions of the affidavit here in determining whether the affidavit is sufficient to create a genuine issue of material fact to preclude summary judgment. Cf. *Jones v. Rodzewicz*, 165 Ga. App. 635, 636-637 (3), (4) (302 SE2d 402) (1983).

2. Winder argues that the trial court erred by applying the wrong legal standard and denying its motion for summary judgment. Winder contends that in determining a basis for holding Winder liable, the trial court applied a negligence standard to the pursuing officer's conduct instead of the proper recklessness standard, and further contends that the McDougalds have failed to create any genuine issues of fact to preclude summary judgment. We hold that issues of fact preclude summary judgment.

When reviewing the grant or denial of summary judgment, we conduct a de novo review of the law and the evidence, construing the evidence and all reasonable deductions therefrom in favor of the non-movant. *Strozzo v. Coffee Bluff Marina Property*, 250 Ga. App. 212, 213 (1) (550 SE2d 122) (2001). Even if the trial court may have applied the wrong legal standard below, because our review on appeal is de novo we address the merits of the trial court's denial of Winder's motion for summary judgment.

To the extent that Winder maintains insurance, it can waive governmental immunity and be sued based on damages arising from the use of a motor vehicle. See *Cameron v. Lang*, 274 Ga. 122, 126 (3) (549 SE2d 341) (2001); OCGA § 33-24-51. In this regard, Winder's liability could be predicated on specific conduct of the pursuing officer:

> OCGA § 40-6-6 (d) (2) expressly pertains to those special circumstances where a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit. In such circumstances, the law enforcement officer's pursuit shall *not* be the proximate cause *or* a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect *unless the law enforcement officer acted with reckless disregard* for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit. OCGA § 40-6-6 (d) (2). That is, under amended OCGA § 40-6-6, a finding of proximate cause or contributing proximate cause must be supported by evidence that the officer acts with reckless disregard for proper law enforcement procedures in initiating

or continuing the pursuit and this reckless disregard actually causes the damage, injury, or death.

(Citations and punctuation omitted; emphasis in original.) *Lang v. Becham*, 243 Ga. App. 132, 133 (530 SE2d 746) (2000).

Viewed in the light most favorable to the McDougalds, the evidence reveals that the pursuing officer continued to chase Ashley after a fellow officer instructed him to end the pursuit. Although the pursuing officer slowed down as he approached the curve where the accident occurred, he did not indicate that he was abandoning the chase, but only that he was slowing down because he was afraid that he could not negotiate the curve at such a high speed. Furthermore, the McDougalds submitted an affidavit from an expert with over 30 years of teaching experience in law enforcement. After reviewing the Winder policies on Vehicle Pursuit Actions and various other matters of record, including the statements of the pursuing officer and of the officer who instructed the pursuing officer to terminate the chase, the expert opined that the pursuing officer's actions were in violation of Winder police policies and showed a "reckless disregard for proper police procedure." The expert further opined that local police procedures required that the pursuit, which was initiated over a minor traffic violation, should have been terminated once Ashley recklessly drove past parked cars and started driving on the wrong side of the road. The expert testified that if the pursuing officer had followed proper procedures, the victim's life could have been saved.

The McDougalds therefore presented some evidence that the pursuing officer acted with reckless disregard for proper police procedures, and the trial court properly denied Winder's motion for summary judgment. See *Lang v. Becham*, 243 Ga. App. at 134.

*Judgment affirmed. Johnson, P. J., Eldridge, Ellington and Phipps, JJ., concur. Andrews, P. J., and Ruffin, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

I respectfully dissent.

The City of Winder is entitled to summary judgment because the sole proximate cause of the car crash that tragically killed 14-year-old Ashley McDougald was the child's unlawful operation of the car and high speed flight from a City police officer attempting to carry out his lawful duty.

This is not a claim by an innocent third person who was injured or killed in a vehicular collision with a fleeing violator or the pursuing police officer. This suit was brought against the pursuing officer and his employer, the City of Winder, on behalf of the underaged driver who committed a traffic violation in the presence of the officer, ignored the officer's attempts to stop her, and was killed when she

struck a utility pole while fleeing from the officer at high speed. Georgia's appellate courts have not previously addressed such a claim by a fleeing violator for damages suffered during unlawful flight from an identified police pursuer.[1]

Because there was no evidence the police officer acted with malice or an intent to injure in initiating or continuing the pursuit, the trial court properly granted summary judgment to the individual officer on the basis of official immunity. *Cameron v. Lang*, 274 Ga. 122, 123-126 (549 SE2d 341) (2001). The trial court denied summary judgment to the City, however, finding the City waived its immunity to the extent of insurance purchased to cover the officer's car and that questions of fact existed as to whether the officer was negligent and the City was liable for that negligence on the basis of respondeat superior. See *Gilbert v. Richardson*, 264 Ga. 744, 753-754 (452 SE2d 476) (1994); *Cameron*, 274 Ga. at 126-127. The majority concludes the trial court properly denied summary judgment, but that it should have applied the "reckless disregard" standard set forth in OCGA § 40-6-6 (d) (2) instead of a negligence standard.

OCGA § 40-6-6 sets forth policies for officers engaged in vehicular pursuit of actual or suspected violators of the law. OCGA § 40-6-6 (a), (b), and (c) provide that a police officer using an audible signal and a flashing or revolving red or blue light while in vehicular pursuit of an actual or suspected violator may proceed past a red or stop signal after slowing down, exceed maximum speed limits as long as life or property is not endangered, and disregard regulations governing direction and turning. Subsection (d) (1), (2), and (3) address issues regarding the duty to other persons owed by an officer engaged in vehicular pursuit and the proximate cause of damage, injury, or death occurring during the pursuit. Subsection (d) (1) provides that subsections (a), (b), and (c) "shall not relieve the [officer] from the duty to drive with due regard for the safety of all persons." Subsection (d) (2) further provides that:

> When a law enforcement officer in a law enforcement vehicle is pursuing a fleeing suspect in another vehicle and the fleeing suspect damages any property or injures or kills any person during the pursuit, the law enforcement officer's pursuit shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures in the

---

[1] Compare *Poole v. City of Louisville*, 107 Ga. App. 305 (130 SE2d 157) (1963) (the pursued did not know he was being chased by a police car, which was unmarked and gave no identifying signal, and was injured during a frightened attempt to escape).

officer's decision to initiate or continue the pursuit. Where such reckless disregard exists, the pursuit may be found to constitute a proximate cause of the damage, injury, or death caused by the fleeing suspect, but the existence of such reckless disregard shall not in and of itself establish causation.

Finally, subsection (d) (3) provides that "[t]he provisions of [subsection (d)] shall apply only to issues of causation and duty and shall not affect the existence or absence of immunity which shall be determined as otherwise provided by law."

Taken as a whole, the provisions of OCGA § 40-6-6 cannot be construed to create a duty owed by pursuing police officers to fleeing violators. Rather, § 40-6-6 gives officers exceptional rights in operating vehicles while pursuing actual or suspected violators and establishes duties owed by pursuing officers to innocent persons other than fleeing violators. Although subsection (d) (1) (formerly subsection (d) of the pre-1995 version of the statute) refers to an officer's "duty to drive with due regard for the safety of all persons," this language was construed in the former version of the statute as creating a duty owed to innocent third persons, not to fleeing violators. *Mixon v. City of Warner Robins*, 264 Ga. 385, 387 (444 SE2d 761) (1994); *Archer v. Johnson*, 90 Ga. App. 418, 423-424 (83 SE2d 314) (1954). Subsection (d) (2) shows on its face that it applies only to claims by innocent third persons and creates no duty owed by a pursuing officer to an actual or suspected fleeing violator. It provides that an officer's pursuit "shall not be the proximate cause or a contributing proximate cause of the damage, injury, or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures. . . ." OCGA § 40-6-6 (d) (2). To apply this subsection to a claim by a fleeing violator, it must be read to stand for the absurd proposition that a pursuing officer may be held liable as "the proximate cause" of a fleeing suspect's injury or death when the injury or death was "caused by the fleeing suspect." It also makes the implausible presumption that the legislature intended to treat claims by fleeing violators the same as those made by innocent third parties by applying the same "reckless disregard" standard to both.

If this were a case involving claims against the officer and the City by an innocent third person injured or killed in a collision with the fleeing violator, the provisions of OCGA § 40-6-6 (d) (2) would mandate application of the "reckless disregard" standard to the claim against the officer, as well as to the claim that the City was liable for the officer's actions based on the principle of respondeat superior. Accordingly, a finding of proximate cause or contributing proximate cause would have to be supported by evidence that "the law enforce-

ment officer acted with reckless disregard for proper law enforcement procedures in the officer's decision to initiate or continue the pursuit." OCGA § 40-6-6 (d) (2). Since the legislature has determined for reasons of public policy that an innocent third person must satisfy a stringent "reckless disregard" standard, common sense and public policy dictate that a more stringent standard applies to any claim by a fleeing violator.

A police officer's duty to apprehend actual or suspected violators of the law is balanced under OCGA § 40-6-6 with a corresponding duty not to recklessly disregard the safety of innocent third persons during vehicular pursuit of those violators. *Pearson v. City of Atlanta*, 231 Ga. App. 96, 98 (499 SE2d 89) (1998); *Cameron*, 274 Ga. at 128. As to the fleeing violators themselves, the officer's duty to pursue and apprehend them is a paramount public interest. Even if an officer's pursuit is the cause in fact of injury to a fleeing violator during the pursuit, there is no corresponding duty to protect fleeing violators from their own criminal actions taken to avoid apprehension. See *Lindstrom v. City of Corry*, 563 Pa. 579 (763 A2d 394) (2000). To impose this duty would discourage police from pursuing the violators and encourage flight, thereby leaving potentially dangerous drivers on the road. It would also reward fleeing violators with causes of action for damages flowing from their own wrongdoing.

Where an actual or suspected violator flees from a police officer identified as such, the only basis for concluding that the officer's vehicular pursuit may be the proximate cause or contributing proximate cause of damages, injury, or death suffered by the violator during the pursuit is evidence that the officer acted with actual malice or an intent to injure in initiating or continuing the pursuit. In other words, there must be evidence the officer had a deliberate or premeditated intention to inflict injury or take life, not merely an intention to do the act purportedly resulting in the injury or death. *Kidd v. Coates*, 271 Ga. 33 (518 SE2d 124) (1999); *Adams v. Hazelwood*, 271 Ga. 414, 415 (520 SE2d 896) (1999). Moreover, the absence of actual malice or intent to injure may be shown by evidence that the officer's intentional acts were justified as taken in self-defense or in the defense of a third person. *Kidd*, 271 Ga. at 34. This is the standard applied to determine if an officer is entitled to official immunity from individual liability in all cases. It should not be easier for a fleeing violator to recover from the officer's governmental employer which has waived its immunity to the extent of insurance coverage.

There is no claim and no evidence the pursuing officer acted with actual malice or an intent to injure in initiating or continuing the pursuit, so there is no basis for concluding that any action taken by the officer was the proximate cause or contributing proximate cause of the fatal crash suffered by the fleeing violator. Because the pursu-

ing officer had no duty to protect the fleeing violator from her own actions, and the sole proximate cause of the fatal crash was the unlawful high speed flight by the violator, the City of Winder is entitled to summary judgment.

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED MARCH 27, 2002 —

*Carothers & Mitchell, Richard A. Carothers, William M. Coolidge III*, for appellant.
*William S. Hardman*, for appellees.