S02G1156. CITY OF WINDER v. McDOUGALD et al.
(583 SE2d 879)

FLETCHER, Chief Justice.

We granted certiorari in this case to consider whether a municipality may be held liable for injuries a suspect incurs when the suspect is fleeing police in a high speed chase. The Court of Appeals held that the municipality could be liable for the wrongful death of the suspect upon a showing that the police officer acted in reckless disregard of proper police procedures.[1] Because the wrongful death claim was brought by the parents of the fleeing suspect and the reckless disregard standard of OCGA § 40-6-6 (d) (2) applies only to the claim of an innocent party, we reverse.

Fourteen-year-old Ashley McDougald took her father's car without permission and was driving in the City of Winder at 4:40 a.m. without turning on the car's headlights. A City police officer observed another vehicle flash its lights at McDougald and when McDougald failed to turn on the lights, the officer turned on his blue flashing lights and began to follow McDougald. When McDougald continued to drive without headlights, the officer turned on his siren and McDougald sped away. While the officer followed McDougald, she increased her speed and soon lost control of the car and hit a utility pole. McDougald was killed and her parents sued the officer and the City. The trial court denied summary judgment for the City, holding that the City had waived immunity to the extent of its insurance coverage and that it could be liable if the officer acted negligently.[2] The Court of Appeals affirmed the denial of the City's motion, but held that the standard for liability under OCGA § 40-6-6 (d) (2) was whether the police officer acted in reckless disregard of proper police procedures.

Prior to 1995, OCGA § 40-6-6 (a) provided that an officer pursuing a suspect "shall not [be] relieve[d] . . . from the duty to drive

---

[1] *City of Winder v. McDougald*, 254 Ga. App. 537 (2) (562 SE2d 826) (2002).

[2] The trial court granted summary judgment to the individual officer based on official immunity and that ruling was not challenged on appeal.

with due regard for the safety of all persons." In *Mixon v. City of Warner Robins*,[3] this Court relied on this provision to hold that a municipality could be liable for injuries to an innocent third party caused by a suspect who was fleeing police. A municipality's civil liability "is solely dependent upon the officer's own adherence to his duty to drive with the requisite due regard for the safety of others."[4] Summary judgment would be appropriate only if the evidence demanded a finding that the officer properly balanced the risk to the safety of other drivers in the pursuit against the interest in apprehending the suspect. Under this standard, the Court concluded that the trial court had erred in entering summary judgment for the defendants, and thus, the Court expanded the liability of police and municipalities.

In response to *Mixon*, the legislature amended OCGA § 40-6-6 (d) to provide that an officer's pursuit of a suspect "shall not be the proximate cause or a contributing proximate cause of the damage, injury or death caused by the fleeing suspect unless the law enforcement officer acted with reckless disregard for proper law enforcement procedures."[5] By imposing a reckless disregard standard in place of the negligence standard of *Mixon*, the legislature narrowed the circumstances in which an innocent party injured by a fleeing suspect could recover from the municipality. Because the legislature enacted subsection (d) (2) to limit liability when a fleeing suspect injures an innocent person, we conclude that the legislature did not intend simultaneously to expand liability to cover injuries to the fleeing suspect. The Court of Appeals' contrary holding disregards the legislative intent underlying OCGA § 40-6-6 (d) (2), is inconsistent with public policy, and leads to an absurd result.[6]

Our conclusion is supported by the appellate courts' interpretations of OCGA § 40-6-6 (d) prior to its 1995 amendment. In 1954 the Court of Appeals emphasized the public policy of protecting *innocent* third parties, stating that while "[i]t is desirable . . . that the officer overtake and apprehend the criminal, . . . it is equally as important that innocent persons, whether or not connected with the emergency to be met, not be maimed or killed in the operation."[7] Additionally, the other cases interpreting the pre-amendment version of OCGA

---

[3] 264 Ga. 385 (444 SE2d 761) (1994).

[4] Id. at 388.

[5] 1995 Ga. Laws 855, codified as OCGA § 40-6-6 (d) (2).

[6] See *New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960) ("Where the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute.").

[7] *Archer v. Johnson*, 90 Ga. App. 418, 424 (83 SE2d 314) (1954).

§ 40-6-6 (d) all involved a claim for recovery by an innocent person.[8] Because the legislature sought to restrict rather than expand liability, and the statute has been previously construed to protect innocent parties only, we hold that OCGA § 40-6-6 (d) (2) does not govern the claim of the fleeing suspect.

The fleeing suspect may be able to recover for her own injuries if an officer acts with an actual intent to cause injury.[9] However, the trial court concluded that there was no evidence that the officer acted with malice or an actual intent to cause injury, and therefore, that issue is not before us in this case.

*Judgment reversed. All the Justices concur, except Sears, P. J., Benham and Thompson, JJ., who dissent.*

BENHAM, Justice, dissenting.

The majority opinion has ignored the basic tenets of statutory construction in order to create by judicial legislation a public policy declaring that persons fleeing from police pursuit are fair game for tactics that constitute a reckless disregard for proper police procedure. Because the holding of the majority opinion is based on defective statutory interpretation, usurpation of the legislative role, and ill-advised public policy, I must dissent.

"It is a basic rule of construction that a statute or constitutional provision should be construed 'to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning.' [Cit.]" *Brown v. Liberty County*, 271 Ga. 634, 635 (522 SE2d 466) (1999). The majority's interpretation of OCGA § 40-6-6 (d) (1) violates that "basic rule" by restrictively construing broad language describing the class of persons as to whom there is a duty to drive with due regard for their safety and without reckless disregard of proper police procedure.

In OCGA § 40-6-6 (d) (1), the legislature placed a limitation on the privileges conferred in subsection (b),[10] providing that those privileges "shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of *all persons*."

---

[8] *Mixon*, 264 Ga. at 387; *Wilson v. City of Atlanta*, 223 Ga. App. 144 (476 SE2d 892) (1996); *Thompson v. Payne*, 216 Ga. App. 217 (453 SE2d 803) (1995); *Banks v. Patton*, 202 Ga. App. 168 (413 SE2d 744) (1991); *Archer*, 90 Ga. App. at 418.

[9] See *Kidd v. Coates*, 271 Ga. 33, 34 (518 SE2d 124) (1999).

[10] The driver of an authorized emergency vehicle or law enforcement vehicle may: (1) Park or stand, irrespective of the provisions of this chapter; (2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation; (3) Exceed the maximum speed limits so long as he or she does not endanger life or property; and (4) Disregard regulations governing direction of movement or turning in specified directions. OCGA § 40-6-6 (b).

(Emphasis supplied.) The General Assembly did not provide for a duty to drive with due regard for the safety of all persons *other than fleeing suspects*, but with due regard for the safety of "all persons." To construe "all persons" as excluding fleeing suspects is to render the word "all" meaningless, which we may not do. *Brown v. Liberty County*, supra. Likewise, in subsection (d) (2), when the General Assembly used the language, "the fleeing suspect . . . injures or kills any person during the pursuit," no limitation was placed by the legislature on the broad phrase, "any person." Had the legislature intended to exclude the fleeing suspect from that phrase, it could have indicated that intent by adding the phrase "other than the fleeing suspect" immediately after "any person." However, the legislature did not choose to do so, and it is not the role of this Court to impose its preference by purporting to construe the statute. "Courts of last resort must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning." *Frazier v. Southern Ry. Co.*, 200 Ga. 590, 593 (37 SE2d 774) (1946).

The majority opinion's assertion that the language of subsection (d) (1) has been construed to protect innocent parties only is inaccurate. The majority has substituted context for construction in that those cases all were based on fact patterns involving only injuries to third parties, thus requiring no consideration of potential liability for the injuries to a fleeing driver and offering no rationale for exempting such drivers from the pursuing officer's duty not to drive with reckless disregard of proper procedure.

The majority opinion's attempt to derive the intent of the legislature in amending OCGA § 40-6-6 (d) is based on circular reasoning: it asserts without support that the effect of the amendment was to narrow "the circumstances in which an innocent party injured by a fleeing suspect could recover from the municipality," and then concludes, based on that assertion, that the legislature did not intend to expand liability to cover injuries to the fleeing suspect. The legislature did not, however, address the distinction between innocent parties and fleeing suspects in the context of a pursuing officer's duty not to drive in reckless disregard of procedure. That distinction is judicially created with "reckless disregard" for the language employed by the legislature. "[T]he 'golden rule' of statutory construction . . . requires us to follow the literal language of the statute 'unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else.' [Cit.]" *Telecom*USA, Inc. v. Collins*, 260 Ga. 362, 363 (1) (393 SE2d 235) (1990). The "literal language" employed by the legislature to describe the class of persons protected from reckless disregard of proper procedure in the course of

police pursuits, "any person," produces no contradiction, absurdity, or inconvenience.

The majority opinion's distinction between innocent third parties and fleeing suspects in the coverage of OCGA § 40-6-6 (d) is based on an unstated and judicially-created public policy that fleeing suspects are not entitled to any protection from police misconduct short of actual malice. It is not the role of the appellate courts to create public policy or to assert public policy exceptions to enactments of the General Assembly. *Jellico v. Effingham County*, 221 Ga. App. 252, 253 (471 SE2d 36) (1996). While some intuitive repugnance may be engendered by the notion that a wrongdoer injured in the course of fleeing apprehension might be entitled to recover damages from the governmental unit by whom the pursuing law enforcement officer is employed, the statute as it is presently worded permits that outcome. That is, it encompasses the principle that although the fleeing suspect's own conduct will most often lead directly to the injuries involved in such a suit, the wrongful conduct of a police officer in initiating or continuing a chase in violation of proper procedure may also be a contributing cause.

The efforts of the majority opinion to translate repugnance into law requires us to ignore or distort the plain language the General Assembly chose to use, constitutes an intrusion on the legislature's prerogative to make public policy for this State, and produces a poorly-conceived public policy which relegates human life to a value lower than that of apprehending traffic law violators. In *Tennessee v. Garner*, 471 U. S. 1, 11 (105 SC 1694, 85 LE2d 1) (1985), the U. S. Supreme Court considered a statute authorizing the use of deadly force to stop fleeing felony suspects and held, "It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." In contrast to that statement of constitutionally-based public policy, the majority in this case announces a policy stating, in effect, it is better that fleeing suspects run the risk of death than that they escape. Whether applied to a fleeing felon or a joy-riding 14-year-old girl, that policy is contrary to the policy properly established by the General Assembly in OCGA § 40-6-6.

The judgment of the Court of Appeals in this case was reached by means of a straightforward and proper application of OCGA § 40-6-6 (d) to the facts as developed in the trial court, and I would affirm that judgment. While it may well be that affirming the Court of Appeals would result in an amendment of the statute, just as this Court's opinion in *Mixon v. City of Warner Robins*, 264 Ga. 385 (444 SE2d 761) (1994), resulted in the present OCGA § 40-6-6 (d), such a change is for the General Assembly to make, not for this Court.

Because the majority opinion distorts the plain meaning of OCGA § 40-6-6 and, in so doing, violates the principles of statutory construction, usurps the constitutional role of the General Assembly, and impermissibly creates bad public policy, I dissent.

I am authorized to state that Presiding Justice Sears and Justice Thompson join in this dissent.

DECIDED JULY 11, 2003 —
RECONSIDERATION DENIED JULY 30, 2003.

*Carothers & Mitchell, Richard O. Carothers, William M. Coolidge III*, for appellant
*William S. Hardman*, for appellee.
*Craig T. Jones*, amicus curiae.