**2012 UT 14**

**Steve RICHARDS, Respondent,**

v.

**Diana BROWN, Petitioner.**

**No. 20090980.**

Supreme Court of Utah.

March 13, 2012.

Suzanne Marelius, Tracey M. Watson, Salt Lake City, for respondent.

Tineke Van Dijk, Salt Lake City, for petitioner.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 Steve Richards sued his former domestic partner, Diana Brown. He sought to have the relationship declared to be an unsolemnized marriage pursuant to Utah law. Ms. Brown opposed the suit and won when the trial court ruled that Mr. Richards' quest for a statutory marriage was too late. This ruling did not, however, end the case. Mr. Richards also sought to recover money that he alleged that he contributed to the joint obligations of the pair. After trial, the court ruled that Ms. Brown had been unjustly enriched by Mr. Richards' money and awarded him a money judgment. Ms. Brown paid the judgment and did not appeal. Mr. Richards did appeal. He seeks to have this court reverse the district court's dismissal of his unsolemnized marriage claim. Ms. Brown seeks to dispatch Mr. Richards' appeal by insisting that Mr. Richards' right to appeal ended when he accepted money from Ms. Brown to resolve his unjust enrichment claim.

¶ 2 The court of appeals rejected Ms. Brown's argument because an acknowledgment of satisfaction of judgment had not been placed in the record as required by Utah Rule of Civil Procedure 58B. The court of appeals also reversed the trial court's grant of partial summary judgment against Mr. Richards on his unsolemnized marriage claim. We affirm the court of appeals' holding that Mr. Richards did not waive his right to appeal, though we do so on other grounds. We also affirm the court of appeals' construction of Utah Code section 30–1–4.5.

## BACKGROUND

¶ 3 Steve Richards and Diana Brown were involved in an intimate relationship. They began living together in Ms. Brown's home in May 1995. Though Mr. Richards proposed marriage several times, Ms. Brown never accepted the marriage proposal and the two were never formally married. They did, however, have one child together, born in 1996, and they held themselves out as husband and wife. While they lived together, they shared many living expenses, and Mr. Richards contributed to the mortgage on Ms. Brown's home.

¶ 4 Approximately six years into the relationship, Mr. Richards and Ms. Brown ceased all sexual relations and moved into separate bedrooms within the home. Four years later, in August or September 2005, Mr. Richards moved out of Ms. Brown's home and into a nearby apartment. In October 2005, the parties participated in mediation to resolve custody issues. They also scheduled mediation to discuss property dis-

tribution, but Ms. Brown canceled the mediation before it occurred. Despite their separation, the parties continued to socialize through December 2005, and they celebrated birthdays, Thanksgiving, and Christmas as a family. Mr. Richards testified that by early 2006 he realized that reconciliation was not possible.

¶ 5 In December 2006, Mr. Richards filed a Verified Petition for Paternity and Related Matters. He requested that the court recognize that an unsolemnized marriage had occurred between him and Ms. Brown under Utah Code section 30–1–4.5; he also requested the award of an interest in Ms. Brown's home under any one of several equitable doctrines.

¶ 6 In response, Ms. Brown filed a motion for partial summary judgment on the unsolemnized marriage claim. She argued that when Mr. Richards moved out of her home in September 2005, he terminated the relationship and triggered the running of the one-year statute of repose. As a result, she argued, Mr. Richards' petition filed in December of 2006 was untimely.

¶ 7 The domestic relations commissioner agreed with Ms. Brown and recommended that "a relationship [for purposes of unsolemnized marriage] is terminated by cessation of [the required element of] cohabitation." The district court adopted the commissioner's recommendation. It granted Ms. Brown's motion for partial summary judgment and held that "the latest possible date under which the parties . . . cohabited ended in September 2005 when petitioner moved out," therefore "as a matter of law, the Petition was untimely in that it was brought after the one year period from the termination of the common law marriage relationship."

¶ 8 The remaining equitable claims went to trial. Ultimately, the trial court found that Ms. Brown had been unjustly enriched by Mr. Richards' contributions to home improvement and maintenance expenses. The trial court ordered Ms. Brown to pay Mr. Richards $10,136.

¶ 9 Ms. Brown paid Mr. Richards $10,136 as ordered by the court. Mr. Richards accepted payment but never filed an acknowledgment of satisfaction of judgment in accordance with Utah Rule of Civil Procedure 58B, nor has Ms. Brown filed a motion to have the court enter a declaration of satisfaction under the rule.

¶ 10 After accepting payment on the judgment, Mr. Richards appealed. He argued that the district court erred when it held that his petition to establish an unsolemnized marriage was untimely because it was not filed within one year after the termination of cohabitation. Ms. Brown countered that Mr. Richards waived his right to appeal and rendered the controversy moot when he accepted payment in satisfaction of the judgment on the unjust enrichment claim.

¶ 11 The court of appeals rejected Ms. Brown's argument that Mr. Richards waived his right to appeal when he accepted payment on the unjust enrichment claim. The court of appeals also reversed the trial court's entry of partial summary judgment on the unsolemnized marriage claim. It held that under Utah Code section 30–1–4.5(2), termination of cohabitation does not necessarily terminate the relationship so as to trigger the running of the statute of repose. Ms. Brown filed a petition for writ of certiorari, which we granted. We have jurisdiction under Utah Code section 78A–3–102(3)(a).

## STANDARD OF REVIEW

■ ¶ 12 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law."[1]

## ANALYSIS

I. AN APPELLANT DOES NOT WAIVE THE RIGHT TO APPEAL A CLAIM WHEN THE APPELLANT ACCEPTS PAYMENT ON A JUDGMENT RESOLVING A SEPARATE AND INDEPENDENT CAUSE OF ACTION

■ ¶ 13 "[T]he general rule [is] that if a judgment is voluntarily paid, [and] is ac-

---

1. *R.E. v. B.B. (State ex rel. T.E.)*, 2011 UT 51, ¶ 16, 266 P.3d 739 (internal quotation marks omitted).

cepted, and a judgment [is thereby] satisfied, the controversy has become moot and the right to appeal is waived."[2] Payment of a judgment in full acts as a satisfaction and discharge of the underlying claim.[3] It is the "final act and end of a proceeding."[4] Payment and its acceptance manifest the parties' expression of finality and resolution of all issues embraced by the particular claim.[5] A party that accepts the benefits of a judgment impliedly acknowledges resolution of the underlying controversy and waives the right to appeal that judgment.[6]

¶ 14 On appeal, Ms. Brown argues that Mr. Richards waived his right to appeal when he accepted payment in satisfaction of the judgment on his unjust enrichment claim.[7] The court of appeals rejected this argument. It reasoned that Mr. Richards did not waive his right to appeal because an acknowledgment of satisfaction of judgment had never been entered on the record under Utah Rule of Civil Procedure 58B.[8] While we agree with the court of appeals' ultimate conclusion that Mr. Richards did not waive his right to appeal, we do so on other grounds.

¶ 15 An acknowledgment of satisfaction of judgment filed under Rule 58B and the act of accepting payment in satisfaction of a judgment do not have the same consequences under the law.[9] While an acknowl-

edgment entered on the record is evidence that payment has been made,[10] its absence does not preclude a determination that the asserted claim has been extinguished. In the absence of an acknowledgment of satisfaction of judgment, an appellate court may examine the record to ascertain whether a payment of the judgment has occurred that is deemed to resolve the controversy and render the appeal moot.

¶ 16 Waiver under this "acceptance-of-benefits doctrine" is very narrow. The right to appeal is waived only for the specific claims upon which payment is accepted.[11]

If a judgment is entered as to one part of a controversy, which is separate and distinct from another part, and the disposition of the latter cannot affect the disposition of the former, a party may accept [payment in satisfaction of the judgment], and not be deemed to [have] waive[d] his right to appeal as to other independent claims which the court refused to grant.[12]

Thus, the right to appeal hinges on whether the claim appealed from is separate and independent from the claim upon which the appellant accepted payment in satisfaction of a judgment.

¶ 17 In *Jensen v. Eddy*, plaintiffs did not waive their right to appeal a separate and

---

2. *Jensen v. Eddy*, 30 Utah 2d 154, 514 P.2d 1142, 1143 (1973).

3. Utah R. Civ. P. 58B(c) ("Satisfaction of a judgment ... shall discharge the judgment, and the judgment shall cease to be a lien....").

4. 47 Am.Jur.2d *Judgments* § 806 (2011); *see also Dawson v. Bd. of Educ. of Weber Cnty. Sch. Dist.*, 118 Utah 452, 222 P.2d 590, 592 (1950) (noting that appellant's acceptance of payment on jury award "constituted full compensation and extinguished his cause of action").

5. *Sierra Nev. Mill Co. v. Keith O'Brien Co.*, 48 Utah 12, 156 P. 943, 947 (1916) ("[W]hen the plaintiff voluntarily accepted full payment of the judgment ... and satisfied and discharged it ... it likewise satisfied and discharged everything that was merged in, and that was determined and adjudicated by the judgment."); *see also* 47 Am.Jur.2d *Judgments* § 806.

6. *Cornia v. Cornia*, 80 Utah 486, 15 P.2d 631, 632 (1932) (holding that where appellants "have voluntarily acquiesced in and recognized the va-

lidity of the decree, and have accepted the benefits of the same in their favor[,] ... they have waived their right to appeal, and are estopped from claiming the right to have the decree reviewed").

7. *Richards v. Brown*, 2009 UT App 315, ¶ 8 n. 9, 222 P.3d 69.

8. *Id.*

9. *See* Utah R. Civ. P. 58B(a)-(b).

10. *Id.*

11. *See Jensen*, 514 P.2d at 1143; *Sierra Nev. Mill Co.*, 156 P. at 946 (noting an exception to the acceptance-of-benefits doctrine "[w]here the judgment or decree consists of two separate, distinct, and unrelated parts, and the disposition of either of which can in no wise affect the disposition of the other").

12. *Jensen*, 514 P.2d at 1143.

independent claim for costs incurred in preserving assets even though they had accepted payment in satisfaction of a judgment for breach of contract.[13] Plaintiffs sued to recover damages for defendants' breach of a contract to purchase a mine and for the expenses plaintiffs incurred in preserving the mine and other assets.[14] The district court found generally for the plaintiffs but denied the claim for expenses incurred to preserve assets.[15] Defendants paid the judgment and plaintiffs accepted the payment.[16] Plaintiffs then appealed the district court's denial of expenses they incurred in preserving the mine.[17]

¶ 18 Defendants moved to dismiss the appeal. They contended that plaintiffs had waived the right to appeal when they accepted payment in satisfaction of the judgment.[18] We denied the motion. We reasoned that the breach of contract and the preservation of assets were separate and independent claims.[19] We held that "the parts of the judgment on which the defendants claim the plaintiffs accepted payment [were] separate and distinct from the cause of action which [was] the main subject of the plaintiffs' appeal."[20] As a result, we concluded that the plaintiffs did not waive their right to appeal the adverse judgment on the preservation of assets claim and we proceeded to reach its merits.[21]

¶ 19 In contrast, in *Hollingsworth v. Farmers Insurance Co.*[22] we found that the appellant had waived its right to appeal because the "only controversy was ... the amount of recovery,"[23] and the appellant had accepted payment of the judgment and executed an acknowledgment of satisfaction of judgment.[24] There we stated that "when a judgment creditor accepts payment and executes [an acknowledgment of a] satisfaction of judgment the controversy becomes moot and the right of appeal is barred."[25] In this case, the court of appeals construed the fact that an acknowledgment of satisfaction had been filed in *Hollingsworth* as a requirement for waiver of the right to appeal under the acceptance-of-benefits doctrine.[26] As stated above, while an acknowledgment of satisfaction entered on the record by either party may confirm that judgment has been satisfied and the claim has been extinguished,[27] it is not necessary for the determination that the right to appeal the judgment has been waived. Rather, it is the inequitable shifting of the burden of risk to an appellee that justifies the acceptance-of-benefits doctrine and waives an appellant's right to appeal.[28] This is the case whenever an appellee prevailing on appeal would be required to recover payment that had already been accepted by the appellant.[29] Under such circumstances, an appellant waives the right to appeal a judgment upon which it has accepted payment because doing so would shift the burden of risk so that the appellee is exposed to unfavorable alternatives regardless of the appeal's outcome.[30] This shift of the burden of risk may occur with or without an acknowledgment of satis-

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.*

21. *Id.*

22. 655 P.2d 637 (Utah 1982).

23. *Id.* at 638.

24. *Id.* at 638–39.

25. *Id.* at 639.

26. *See Richards v. Brown*, 2009 UT App 315, ¶ 8 n. 9, 222 P.3d 69.

27. UTAH R. CIV. P. 58B(a)-(b).

28. *See Trees v. Lewis*, 738 P.2d 612, 613 (Utah 1987) ("An appellant who accepts the benefits of a judgment from which he is appealing accomplishes a significant shift in the burden of risk[.]").

29. *See id.*

30. *See id.*

faction placed on the record, and therefore, the right to appeal may be waived regardless of whether such a filing has been placed in the record under Utah Rule of Civil Procedure 58B.

¶ 20 Here, Mr. Richards did not waive his right to appeal the adverse judgment of his unsolemnized marriage claim under Utah Code section 30–1–4.5 when he accepted payment on the unjust enrichment judgment. A statutory claim to establish an unsolemnized marriage is separate and independent from an equitable claim of unjust enrichment. The two claims do not share common elements, they differ in their underlying policy, and the establishment of one does not necessarily preclude the finding of the other. As a result, we conclude that the resolution of Mr. Richards' unjust enrichment claim does not waive his claims under the unsolemnized marriage statute, and we proceed to reach the merits of Mr. Richards' appeal under Utah Code section 30–1–4.5.

## II. CEASING COHABITATION DOES NOT NECESSARILY TERMINATE AN UNSOLEMNIZED MARITAL RELATIONSHIP UNDER UTAH CODE SECTION 30–1–4.5

¶ 21 The district court found that Mr. Richards failed to file his petition to establish an unsolemnized marriage under Utah Code section 30–1–4.5 within one year of terminating cohabitation. The district court equated the end of cohabitation with the end of the relationship. As a result, it granted partial summary judgment against Mr. Richards and ruled that his petition was untimely under the statute of repose because it was not filed within one year of the end of the relationship.

¶ 22 The court of appeals reversed.[31] It held that under a plain language interpretation, the end of cohabitation does not necessarily end a relationship under section 30–1–4.5.[32] Because there were disputed factual issues regarding the date that the relationship terminated, the court of appeals remanded for further proceedings.[33] We find the court of appeals' analysis well-reasoned and compelling, and we affirm its reversal of the district court's entry of partial summary judgment.

¶ 23 When interpreting a statute, we look first to its text.[34] We employ plain language analysis to carry out the legislative purpose of the statute as expressed through the enacted text.[35] In doing so, we presume that the legislature was deliberate in its choice of words and "used each term advisedly and in accordance with its ordinary meaning." [36] Where a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends.[37]

¶ 24 In Utah Code section 30–1–4.5, the legislature created a method under which a party can establish a marital relationship despite the lack of solemnization or compliance with the traditional formalities of marriage. The statute provides that

(1) A marriage which is not solemnized ... shall be legal and valid if a court ... establishes that it arises out of a contract between a man and a woman who:

(a) are of legal age and capable of giving consent;

(b) are legally capable of entering a solemnized marriage under the provisions of this chapter;

(c) have cohabited;

(d) mutually assume marital rights, duties, and obligations; and

(e) who hold themselves out as and *have acquired a uniform and general reputation as husband and wife.*

31. *Richards v. Brown,* 2009 UT App 315, ¶ 26, 222 P.3d 69.

32. *Id.*

33. *Id.*

34. *State v. Davis,* 2011 UT 57, ¶ 21, 266 P.3d 765.

35. *Marion Energy, Inc. v. KFJ Ranch P'ship,* 2011 UT 50, ¶ 14, 267 P.3d 863.

36. *J.M.W. v. T.I.Z. (In re Adoption of Baby E.Z.),* 2011 UT 38, ¶ 15, 266 P.3d 702 (internal quotation marks omitted).

37. *State ex rel. Z.C.,* 2007 UT 54, ¶ 11, 165 P.3d 1206.

(2) The determination or establishment of a marriage under this section shall occur during the relationship described in Subsection (1), *or within one year following the termination of that relationship.*[38]

¶ 25 As indicated in the language of subsection (2), there are two significant stages of the relationship. The first is the temporal period "during the relationship described in Subsection (1)."[39] This time frame signals the point at which a cause of action to establish an unsolemnized marriage becomes ripe. As noted by the court of appeals, this relationship arises whenever "a contract between a man and a woman"[40] coexists with the five elements listed in subsections (a) through (e).[41]

¶ 26 The second critical time period is "following the termination of that relationship," during which the statute of repose runs until the eventual termination of the claim.[42] This temporal stage requires the court to identify an event that ended the relationship. The triggering event "occurs at the time any one of the statutory [elements] ceases to exist."[43]

¶ 27 However, the language comprising the elements of a relationship described in subsection (1) indicates that not all the elements can be discontinued. While most of the elements are expressed in present tense, the legislature has communicated that elements (c) and (e) are to be treated differently. Specifically, they require that parties "have cohabited"[44] and "have acquired a ... reputation as husband and wife."[45] The legislature expressed these elements in present perfect tense, which "denotes an act, state, or condition that is *now completed* or continues up to the present."[46] Because these elements are expressed in a way that encompasses actions that were "completed" in the "indefinite past,"[47] their

discontinuance alone cannot be the event that terminates the relationship and triggers the statute of repose. Rather, the relationship ends when one of its terminable elements—as indicated by the legislature's use of the present tense—ceases to exist.

¶ 28 We agree with the court of appeals that Mr. Richards' move from Ms. Brown's home did not, as a matter of law, terminate their relationship under the plain language of section 30–1–4.5. Accordingly, Mr. Richards should have been entitled to present evidence that the terminable elements of the relationship did not cease until a later date. Because there are disputed issues of material fact regarding the date upon which the relationship ended, we affirm the court of appeals' reversal of the district court's entry of partial summary judgment and remand for further proceedings consistent with this opinion.

## CONCLUSION

¶ 29 We hold that Mr. Richards did not waive his right to appeal even though he accepted payment on the unjust enrichment judgment because a claim of unjust enrichment is separate and distinct from a claim of an unsolemnized marriage. We also hold that an end to cohabitation does not necessarily terminate a relationship under the plain language of Utah Code section 30–1–4.5. We therefore affirm the decision of the court of appeals.

Justice NEHRING authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice LEE joined.

---

38. UTAH CODE § 30–1–4.5 (emphases added).

39. *Id.* § 30–1–4.5(2).

40. *Id.* § 30–1–4.5(1).

41. *Richards*, 2009 UT App 315, ¶ 20, 222 P.3d 69.

42. UTAH CODE § 30–1–4.5(2).

43. *Richards*, 2009 UT App 315, ¶ 20, 222 P.3d 69.

44. UTAH CODE § 30–1–4.5(1)(c).

45. *Id.* § 30–1–4.5(1)(e).

46. THE CHICAGO MANUAL OF STYLE ¶ 5.126 (16th ed. 2010) (emphasis added).

47. *Id.*