*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2013 UT 48**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MELVIN and RAEGHN TORRIE individually, and
MELVIN and RAEGHN TORRIE for and on behalf of
their deceased minor child WAYNE TORRIE,
*Plaintiffs and Appellants,*

*v.*

WEBER COUNTY and DENTON HARPER,
*Defendants and Appellees.*

No. 20120500
Filed August 6, 2013

Second District, Layton Dep't
The Honorable Robert Dale
No. 100605463

James W. McConkie Jr., Bradley H. Parker, W. Alexander Evans,
Salt Lake City, for appellants

Peter Stirba, J. Michael Hansen, Julia D. Kyte,
Salt Lake City, for appellees

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This case presents an issue of first impression for this
court—whether law enforcement owes a duty of care to fleeing
suspects. Under a plain language analysis of the governing
statute, we hold that law enforcement officers engaged in pursuit
owe a duty to all persons, including fleeing suspects. The
appellants, however, fail to meet their burden on appeal on their
separate claim that Weber County owes a fleeing suspect a duty of

care with respect to its law enforcement agency's implementation of policies and procedures regarding vehicular pursuits and with regard to the training and supervision provided to its officers.

## BACKGROUND

¶ 2 On March 23, 2010, sixteen-year-old Wayne Torrie returned home from school upset because he had been teased by classmates. After an argument with one of his siblings, and against his mother's wishes, Wayne left home in his family's red Chevrolet Suburban. Mrs. Torrie called the Cache County Sheriff's Office and reported that her son had taken the family vehicle. She requested that officers locate Wayne and bring him into custody. While Mrs. Torrie was on the phone with police dispatch, Wayne returned home and pulled into the driveway next to his mother and rolled down the window of the Suburban. Wayne then left again after hearing his mother on the phone speaking with dispatch.

¶ 3 After speaking with the police, Mrs. Torrie attempted to reach Wayne on his cell phone. Wayne did not answer his mother's calls but responded with text messages indicating that he was suicidal. Mrs. Torrie informed dispatch that her son was threatening to commit suicide by crashing the vehicle if police attempted to apprehend him, but she did not ask law enforcement to stop their search efforts.

¶ 4 Cache County personnel eventually determined that Wayne had entered Weber County and contacted the Weber County Sheriff's Office. Cache County provided Weber County with a summary of the situation, including a description of Wayne and the vehicle he was driving, a warning that he was likely suicidal, and that he had texted his parents saying that he was almost out of gas. Cache County also requested that Wayne be brought into custody if he was located.

¶ 5 Deputy Denton Harper of the Weber County Sheriff's Office spotted Wayne in unincorporated Weber County. When he first saw Wayne, the two were traveling in opposite directions. Deputy Harper waited for Wayne to pass him, then turned around and pulled up behind him. Deputy Harper verified the license plate and driver description, then activated his overhead flashing lights while Wayne was stopped at a stop sign. Wayne disregarded Deputy Harper's attempt to pull him over, turned

right at the stop sign, and began to accelerate. Deputy Harper followed in pursuit. Wayne repeatedly crossed the double center divide line of the two-lane road to pass vehicles. During the pursuit, Deputy Harper reported to dispatch that he was traveling about seventy-five miles per hour. Information later recovered from the Suburban indicated that Wayne had reached speeds up to ninety-nine miles per hour.[1] After less than a minute with Deputy Harper in pursuit, Wayne's vehicle abruptly left the road and rolled several times in a neighboring field. Wayne was ejected from the vehicle during the crash and subsequently died from his injuries.

¶ 6 Wayne's parents filed a lawsuit against Deputy Harper and Weber County, alleging various theories of negligence in connection with Deputy Harper's pursuit of their son.[2] After the conclusion of discovery, Mr. and Mrs. Torrie filed for summary judgment, arguing that summary disposition was appropriate because the defendants had not designated an expert witness to rebut their expert on the standard of care. Deputy Harper and Weber County responded with a cross-motion for summary judgment, arguing that no legal duty was owed to fleeing suspects. The district court denied the Torries' motion and granted Deputy Harper and Weber County's motion, stating, "The Court, having reviewed the memoranda filed by the parties, having heard the arguments of counsel, and being fully advised in the premises[,] hereby rules that Defendants Weber County and Denton Harper owed no duty to Plaintiffs' decedent, Wayne Torrie." Plaintiffs timely appealed. This court has jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

---

[1] The posted speed limit on the road was forty miles per hour.

[2] The Torries asserted five causes of action: (1) negligence of Weber County, (2) respondeat superior, (3) negligence of Deputy Harper, (4) willful misconduct on the part of Deputy Harper, and (5) wrongful death.

## STANDARD OF REVIEW

¶ 7 "We review the district court's decision to grant summary judgment for correctness, affording the trial court no deference."[3] "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[4]

## ANALYSIS

¶ 8 The district court dismissed the Torries' claims on summary judgment, determining that there was no legal duty owed to their son. The Torries argue that the district court erred because the statutory language exempting emergency vehicle operators from general traffic laws imposes a duty, including to fleeing suspects. We agree and reverse, determining that the district court prematurely dismissed the Torries' cause of action. The Torries also contend that a common law duty should be imposed.[5] Because we determine that there is a statutory duty, we decline to reach that issue.

¶ 9 For a plaintiff to prevail on a claim of negligence, the plaintiff must establish: "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages."[6]

---

[3] *Crestwood Cove Apartments Bus. Trust v. Turner*, 2007 UT 48, ¶ 10, 164 P.3d 1247.

[4] *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation omitted) (internal quotation marks omitted).

[5] *See Jeffs ex rel. B.R. v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228 (identifying relevant considerations in analyzing whether a duty should exist under the common law); *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶¶ 19–20, 215 P.3d 152 (same).

[6] *Webb v. Univ. of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (internal quotation marks omitted); *see also Jeffs*, 2012 UT 11, ¶ 25 ("An essential difference among the elements is that duty is a question of law determined on a categorical basis, while breach and

"Duty arises out of the relationship between the parties and imposes a legal obligation on one party for the benefit of the other party."[7] "Duty must be determined as a matter of law and on a categorical basis for a given class of tort claims" and is "analyzed at a broad, categorical level for a class of defendants."[8] We caution against the potential for "misunderstanding of the role of duty in tort analysis, sometimes conflating duty with breach and proximate cause."[9]

¶ 10 "'For a governmental agency and its agents to be liable for negligently caused injury suffered by a member of the public, the plaintiff must show a breach of a duty owed him as an individual, not merely the breach of an obligation owed to the general public at large . . . .'"[10] The public duty doctrine precludes the imposition of a duty on a government entity with respect to specific individuals in the absence of a "specific connection between the government agency and the individuals that makes it reasonable to impose a duty."[11] There are at least four circumstances that may create such a special relationship:

> (1) by a statute intended to protect a specific class
> of persons of which the plaintiff is a member from
> a particular type of harm; (2) when a government
> agent undertakes specific action to protect a
> person or property; (3) by governmental actions
> that reasonably induce detrimental reliance by a

---

proximate cause are questions for the fact finder to determine on a case-specific basis.").

[7] *Webb*, 2005 UT 80, ¶ 9 (internal quotation marks omitted).

[8] *Jeffs*, 2012 UT 11, ¶ 23.

[9] *Id.* ¶ 22.

[10] *Day v. State ex rel. Utah Dep't of Pub. Safety*, 1999 UT 46, ¶ 11, 980 P.2d 1171 (quoting *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)).

[11] *Id.* ¶ 12. Governmental immunity is waived in instances where "injury [is] proximately caused by a negligent act or omission of an employee committed within the scope of employment." UTAH CODE § 63G-7-301(4).

5

member of the public; and (4) under certain circumstances, when the agency has actual custody of the plaintiff or of a third person who causes harm to the plaintiff.[12]

The Torries argue that the first example applies here and that Deputy Harper had a statutory duty to use reasonable care in deciding whether to pursue Wayne and in his subsequent execution of that high speed pursuit.

¶ 11 We previously determined in *Day v. State ex rel. Utah Department of Public Safety* that a law enforcement officer engaged in high speed pursuit of a suspect owes a statutory duty of care to innocent third parties.[13] We must now decide whether that duty extends to the fleeing suspect. In analyzing whether a statutory duty exists, we look first to the statute itself and give effect to its plain language. "[W]e presume that the legislature was deliberate in its choice of words and used each term advisedly and in accordance with its ordinary meaning. Where a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends."[14] Utah Code section 41-6a-212, the statute providing exemptions to traffic laws for emergency vehicles, states in subsection (6) that "[t]he privileges granted under this section do not relieve the operator of an authorized emergency vehicle of the duty to act as a reasonably prudent emergency vehicle operator in like circumstances."[15] Further, subsection (1)(b) of the statute

---

[12] *Id.* ¶ 13.

[13] 1999 UT 46, ¶ 14; *see infra* ¶¶ 13–16 for further discussion related to the *Day* decision.

[14] *Richards v. Brown*, 2012 UT 14, ¶ 23, 274 P.3d 911 (footnote omitted) (internal quotation marks omitted).

[15] The Torries also rely on Utah Code sections 41-6a-904, mandating that vehicles yield to approaching emergency vehicles, and 41-6a-1004, requiring pedestrians to also yield to emergency vehicles. Because of the manner in which we decide this case, we need not rely on those provisions.

The defendants argue that Utah Code section 41-6a-210, which requires vehicles to stop when an officer signals them

states, "the operator of an authorized emergency vehicle may exercise the privileges granted under this section when . . . in the pursuit of an actual or suspected violator of the law," indicating that the legislature intended the statute to apply to pursuits like the case at bar.[16] The legislature's failure to include a carve-out exception to the duty referenced in subsection (6) for fleeing suspects, an act which we consider to be deliberate on the part of the legislature,[17] reinforces our determination that such a duty should therefore be imposed.

¶ 12 While we recognize that other jurisdictions have looked to the plain language of similar statutes and interpreted that the duty did not extend to fleeing suspects,[18] we decline to depart

---

to do so and does not include a corollary to 41-6a-212's duty for emergency vehicle operators, is more applicable than section 41-6a-212. We disagree. An emergency vehicle operator's exemption from general traffic laws, which allows a law enforcement officer the ability to engage in a pursuit, originates in section 41-6a-212. Our court of appeals has relied on section 41-6a-212 in a case involving a yielding motorcyclist—rather than section 41-6a-904, which requires vehicles to yield to emergency vehicles and includes a subsection stating this does not eliminate the duty of emergency vehicle operators to others on the road—when considering an emergency vehicle operator's duty, further affirming this conclusion. *Willden v. Duchesne Cnty.*, 2009 UT App 213, ¶¶ 3, 4, 6–15, 217 P.3d 1143.

[16] UTAH CODE § 41-6a-212(1)(b).

[17] *See Richards*, 2012 UT 14, ¶ 23.

[18] *See, e.g., Estate of Day v. Willis*, 897 P.2d 78, 81 n.7 (Alaska 1995) ("We do not interpret these sections as establishing a duty to protect fleeing offenders. Rather, these provisions focus on the safety of innocent third parties."); *Bryant v. Beary*, 766 So.2d 1157, 1160 (Fla. Ct. App. 2000) (holding that "these statutes are not intended to create a duty where none exists, but to preserve any that do exist"); *City of Winder v. McDougald*, 583 S.E.2d 879, 881 (Ga. 2003) ("Because the legislature sought to restrict rather than expand liability, and the statute has been previously construed to protect innocent parties only, we hold that [the statute] does not govern the claim of the fleeing suspect."); *Robinson v. City of*

from our established plain language analysis.[19] "[I]t is elementary that we do not seek guidance from legislative history and relevant policy considerations when the statute is clear and unambiguous. Rather, [w]e must be guided by the law as it is[.]"[20] "When *language is clear and unambiguous,* it must be held to mean what it expresses, and *no room is left for construction.*"[21] We determine that the statutory language imposes a duty on Deputy Harper in this case, precluding summary disposition at this early stage of the litigation.

¶ 13 Further bolstering our decision, the conclusion we reach today was alluded to in the dicta of *Day v. State ex rel. Utah Department of Public Safety.*[22] While *Day* was based on the prior statutory language,[23] our court of appeals has compared the two statutes and determined that "the language *imposing* the duties is nearly identical. Both statutes state that they 'do not relieve the operator of an authorized emergency vehicle' of or from the enumerated duty."[24] We agree.

---

*Detroit,* 613 N.W.2d 307, 314 (Mich. 2000) ("[T]he police owe no duty to a wrongdoer, whether the wrongdoer is the fleeing driver or a passenger.").

[19] *See McDougald,* 583 S.E.2d at 881 (Benham, J., dissenting) ("The majority opinion has ignored the basic tenets of statutory construction in order to create by judicial legislation a public policy declaring that persons fleeing from police pursuit are fair game for tactics that constitute a reckless disregard for proper police procedure. Because the holding of the majority opinion is based on defective statutory interpretation, usurpation of the legislative role, and ill-advised public policy, I must dissent.").

[20] *Taylor ex rel. C.T. v. Johnson,* 1999 UT 35, ¶ 13, 977 P.2d 479 (second alteration in original) (citation omitted) (internal quotation marks omitted).

[21] *Id.* (internal quotation marks omitted).

[22] 1999 UT 46.

[23] UTAH CODE § 41-6-14 (1991), renumbered as § 41-6a-212 by 2005 Utah Laws 45.

[24] *Willden,* 2009 UT App 213, ¶ 11.

¶ 14 *Day* acknowledged that sometimes pursuit is not the proper course of action:

> Although law enforcement officers have a general duty to apprehend those who break the law, that duty is not absolute, especially where the violation is only a misdemeanor or an infraction—such as driving ten miles per hour over the speed limit—and the attempt to apprehend the person creates a serious risk of death or injury to third persons *or the fugitive.* [25]

¶ 15 The *Day* decision further recognized that in some instances "threat of injury *to the safety of the person fleeing* and to the safety of the bystanders is significant enough, and the magnitude of the possible harm so momentous, to dictate that the fleeing person be allowed to escape *rather than imperiling his safety* or the safety of others."[26] These words, albeit dicta, appear to recognize a legal duty for officers even with regard to the fleeing suspect. *Day* ultimately concluded that

> [t]he test is whether the driver of the emergency vehicle acted reasonably and with appropriate care for the safety of others in light of all the circumstances. Among the factors that should be considered in deciding whether an officer acts with reasonable care for the safety of others using the highways and streets are the density of traffic and population of the area in which the pursuit occurs; whether the area is rural or urban; the nature of the street, e.g., whether freeway or city streets with stop signs and semaphores; the presence of pedestrians and school zones; the weather and visibility; and, of course, the urgency of apprehending the fleeing person and whether

---

[25] *Day*, 1999 UT 46, ¶ 24 (emphasis added).

[26] *Id.* (emphases added).

allowing that person to escape may itself pose a serious threat to the safety of others.[27]

¶ 16 While we do not per se adopt this test in the case at bar, many of the enumerated factors will likely remain relevant on remand in this case. Additionally, the Weber County Sheriff's Office policy and procedures manual may be relevant in determining whether Deputy Harper's pursuit of Wayne was reasonable.[28]

¶ 17 In reaching the conclusion that law enforcement officers owe a legal duty to fleeing suspects, we reiterate that the imposition of a duty is a separate and distinct analysis from breach and proximate cause. The Torries recognize in their briefing that a "police officer may engage in the pursuit so long as it is reasonable to do so." "An essential difference among the elements is that duty is a question of law determined on a categorical basis, while breach and proximate cause are questions for the fact finder determined on a case-specific basis."[29] "[Q]uestions about which circumstances pose such a high degree of risk that a [professional] should have taken greater precautions are questions of breach of duty; they are insufficient to defeat the categorical existence of a duty."[30] To impose liability on Deputy Harper, the fact finder will also need to be persuaded that his conduct was the proximate cause of Wayne's accident.[31]

---

[27] *Id.* ¶ 32.

[28] *Clegg v. Wasatch Cnty.*, 2010 UT 5, ¶ 29, 227 P.3d 1243 ("[V]iolation of the Policy Manual will be relevant to the question of negligence, but will not necessarily be determinative.").

[29] *Jeffs*, 2012 UT 11, ¶ 25.

[30] *Id.* ¶ 34.

[31] *See id.* ¶ 35 (breach and proximate cause counterbalance any improper incentive for those imposed with a duty because "they pose significant barriers to plaintiffs"); *Day*, 1999 UT 46, ¶ 16 ("Whether the State might be liable in the instant case raises an issue of proximate cause as to whether it was reasonably foreseeable that [the officer's] continuing the chase might result in [the suspect's] car colliding with another. That is not an issue for

¶ 18 Under the law, the Torries are entitled to an opportunity to attempt to establish that Deputy Harper did not conduct his pursuit of Wayne "as a reasonably prudent emergency vehicle operator in like circumstances."[32]   Therefore, we reverse the district court's grant of summary judgment holding that Deputy Harper owed no duty to Wayne and remand for further proceedings.

¶ 19 With regard to the issue of whether a separate duty of care is owed by Weber County, the Torries fail to meet their burden of persuasion before this court. Appellants bear the burden of demonstrating that the district court's ruling was erroneous under the applicable standard of review. The Torries do not separately brief a rationale to substantiate the imposition of a duty on Weber County. It seems that the Torries assumed that if a duty was owed by the officer in this case, then it necessarily followed that a duty would be imposed on the supervising agency, Weber County.  However, as the party requesting relief from this court, it was the Torries' responsibility to meet the requirements of Utah Rule of Appellate Procedure 24(a)(9) and set forth "the contentions and reasons of the appellant with respect to the issues presented, including the grounds for reviewing any issue not preserved in the trial court, with citations to the authorities, statutes, and parts of the record relied on." "Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.  As we have noted many times before, this court is not a depository in which the appealing party may dump the burden of argument and research."[33]   Therefore, in light of the utter failure on the part of the Torries to independently brief any arguments supporting the imposition of either a statutory or

---

summary judgment. In similar instances, we have held that such an issue is for the jury." (citations omitted)).

[32] UTAH CODE § 41-6a-212(6).

[33] *State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 (citation omitted) (internal quotation marks omitted).

common law duty with regard to Weber County, we do not decide that issue.

## CONCLUSION

¶ 20 The plain language of Utah Code section 41-6a-212 imposes upon law enforcement officers in pursuit of a fleeing suspect a "duty to act as a reasonably prudent emergency vehicle operate in like circumstances." We decline to interpret the statute beyond the plain wording chosen by the legislature but acknowledge that the ultimate negligence analysis including breach and proximate cause is very case-specific and fact-intensive. Accordingly, we determine that summary judgment is not appropriate and reverse and remand for further proceedings as it relates to the Torries' negligence claim against Deputy Harper. Because the Torries have failed to meet their burden on appeal as to the Sheriff's Office as an agency, we affirm the district court's grant of summary judgment as to Weber County.