2013 UT App 254

# THE UTAH COURT OF APPEALS

LEE JACKSON; ACTION INVESTMENT SERVICES, LLC; AND
INTERNATIONAL PETROLEUM, LLC,
Plaintiffs and Appellees,
*v.*
WILLIAM C. HALLS,
Defendant and Appellant.

Memorandum Decision
No. 20120913-CA
Filed October 24, 2013

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 080700504

William C. Halls, Appellant Pro Se
James H. Deans, Attorney for Appellees

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR. and
STEPHEN L. ROTH concurred.

CHRISTIANSEN, Judge:

¶1     William C. Halls appeals from the district court's denial of
his motion to compel delivery of the cash value of his homestead
exemption in certain property executed upon by Lee Jackson;
Action Investment Services, LLC; and International Petroleum,
LLC (collectively, Plaintiffs). We reverse and remand.

¶2     This case arises from Plaintiffs' attempts to collect on a
judgment obtained against Halls in a prior proceeding (the
Judgment). In August 2008, Plaintiffs filed a complaint seeking to
renew the unpaid portion of the Judgment and the district court
entered default judgment against Halls. Plaintiffs obtained a writ

of execution against Halls' primary residence, and the sheriff set the sale for March 1, 2011. On January 28, 2011, Halls filed a declaration of homestead with the county recorder claiming a homestead exemption in that residence. *See* Utah Code Ann. § 78B-5-503(2) (LexisNexis Supp. 2010) (providing for a portion of an individual's residence to remain exempt from execution or levy). In response to Halls' exemption, Plaintiffs applied a $40,000 credit to the Judgment,[1] and the sheriff proceeded with the sale on March 1.

¶3    At the sale, Halls requested that Plaintiffs tender a cash payment to him in the amount of his homestead exemption. Plaintiffs refused to pay cash based upon their position that crediting $40,000 toward the Judgment gave Halls "value" that satisfied the requirements of the homestead exemption. Plaintiffs were ultimately the successful bidders on Halls' residence with a credit bid of $425,000 against the Judgment.

¶4    Thereafter, Halls filed a motion to compel Plaintiffs to deliver payment of his homestead exemption in cash rather than a credit against the Judgment. The district court denied Halls' motion, agreeing with Plaintiffs that the $40,000 credit against the Judgment had satisfied Halls' homestead exemption. Halls appeals.

¶5    Halls challenges the district court's interpretation of the exemption statute. We review a district court's statutory interpretation for correctness. *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600. Halls argues that because he filed a

---

[1]Halls' homestead declaration identified his claimed homestead exemption in the residence as $40,000, presumably because that figure included a homestead exemption for his wife with whom he owned the residence jointly. However, Plaintiffs executed only against Halls' interest in the residence, and Halls has asserted on appeal an entitlement only to his own homestead exemption of $20,000.

declaration of homestead on his residence prior to the execution sale, he was entitled to receive the amount of his exemption in cash from the proceeds of the sale and Plaintiffs were entitled only to the excess of the proceeds above the value of his exemption. We agree.

¶6     The Utah Exemptions Act (the Act) creates a homestead exemption "consisting of property in this state in an amount not exceeding . . . $20,000 in value if the property claimed is the primary personal residence of the individual." Utah Code Ann. § 78B-5-503(2)(a) (LexisNexis Supp. 2010). The Act further provides, "Property that includes a homestead may not be sold at execution if there is no bid that exceeds the amount of the declared homestead exemption." *Id.* § 78B-5-504(5) (2008). Thus, a judgment creditor executing against a residence "is only entitled to receive those proceeds that do not impair the [debtor's] homestead exemption." *Homeside Lending, Inc. v. Miller*, 2001 UT App 247, ¶ 19, 31 P.3d 607. Accordingly, Halls was entitled to receive $20,000 from the proceeds of the sale on Plaintiffs' bid of $425,000 before the remaining proceeds could be returned to Plaintiffs as the executing judgment creditor.

¶7     Plaintiffs assert that because they satisfied their bid with a "credit" or "judgment" bid—a bid satisfied with a credit against the judgment owed rather than a cash payment—there were no cash proceeds from the sale and Halls is therefore not entitled to delivery of his exemption as a cash payment. As a general rule, the sheriff may not accept payment at an execution sale on credit but must take payment from the successful bidder in cash. *See* 30 Am. Jur. 2d *Executions & Enforcement of Judgments* § 425 (2005); 33 C.J.S. *Executions* § 380 (2009). However, where the executing creditor is also the successful bidder, many courts have held that the creditor may satisfy the bid with a credit against the judgment owed, rather than undertaking the "useless ceremony of handing money to the sheriff and then receiving it back from him." *See Title & Trust Co. v. Security Bldgs. Corp.*, 284 P. 177, 178 (Or. 1930) (citation and internal quotation marks omitted); *see also Holden v. Cribb*, 561

S.E.2d 634, 638 (S.C. Ct. App. 2002) ("[I]f the successful bidder is the judgment holder and is solely entitled to whatever sums may have been bid for the property, it would be senseless to require the bidder to pay cash."). *See generally Citibank Fed. Sav. Bank v. New Plan Realty Trust*, 748 A.2d 24, 29 (Md. 2000) (reviewing jurisdictions adopting the judgment bid exception). And it is "well established" in Utah that "if the trustee forecloses he . . . may bid and take credit for his judgment." *Chapman v. Schiller*, 83 P.2d 249, 255 (Utah 1938).

¶8      However, we do not agree with Plaintiffs' argument that because they satisfied their bid at the execution sale with a credit against the Judgment there were no proceeds of the sale from which Halls' homestead exemption must be paid. Allowing the executing creditor to pay its winning bid by credit is merely a convenience to avoid the "useless ceremony" of payment to the sheriff by the very party which is entitled to receive the proceeds of the sale. *See Title & Trust Co.*, 284 P. at 178. "The fact that the judgment creditor does not tender the cash to the sheriff . . . is irrelevant and in no way alters the character of the transaction as a sale of property purchased with cash." *Petrie v. General Contracting Co.*, 413 P.2d 600, 602 (Utah 1966) (Callister, J., dissenting from the majority's conclusion that an attorney entitled to one-third of a judgment as a contingency fee was entitled to a one-third ownership interest in property purchased with credit against that judgment). Moreover, payment of the full bid amount by such a credit is predicated on the successful bidder being "*solely* entitled to whatever sums may have been bid for the property." *Holden*, 561 S.E.2d at 638 (emphasis added).

¶9      Here, the sheriff's notice of sale provided that payment was to be made in cash. *See* 33 C.J.S. *Executions* § 380 (2009) ("Cash within the meaning of this rule generally means current legal tender or money . . . ."). Plaintiffs submitted a successful bid of $425,000 for Halls' residence and were entitled to the proceeds from that bid in excess of Halls' homestead exemption of $20,000 and any other superior claims or fees associated with the sale. *See*

*Homeside*, 2001 UT App 247, ¶ 19. While Plaintiffs may have properly satisfied some part of their bid with a credit against the Judgment, they were required to pay cash for any part of the bid that they were not entitled to receive, which in this case includes the full amount necessary to satisfy Halls' exemption. *See* 33 C.J.S. *Executions* § 380 (2009); *cf. Holden*, 561 S.E.2d at 638 ("Were it not for the requirement that the portion of the bid attributable to the homestead exemption be paid in cash, the sheriff could have accepted [the creditor's] bid without requiring a cash deposit because it would have been immediately repaid to her in her capacity as judgment creditor.").

¶10    Plaintiffs also argue that the Act does not require the payment of cash to the property owner because the homestead exemption is defined in terms of "value" and Plaintiffs gave value to Halls by crediting the Judgment in the amount of the exemption. "When interpreting a statute, . . . [w]e employ plain language analysis to carry out the legislative purpose of the statute as expressed through the enacted text." *Richards v. Brown*, 2012 UT 14, ¶ 23, 274 P.3d 911 (footnote citation omitted). "Where a statute's language is unambiguous and provides a workable result, we need not resort to other interpretive tools, and our analysis ends." *Id.* However, we read the statute as a whole to "give effect to every provision of a statute and avoid an interpretation that will render portions of a statute inoperative." *Warne v. Warne*, 2012 UT 13, ¶ 36, 275 P.3d 238.

¶11    The relevant provision of the Act states, "An individual is entitled to a homestead exemption consisting of property in this state in an amount not exceeding . . . $20,000 in value if the property claimed is the primary personal residence of the individual." Utah Code Ann. § 78B-5-503(2)(a) (LexisNexis Supp. 2010). Plaintiffs assert that the legislature's use of the term "value" in the definition of the exemption indicates that anything of value may be used to satisfy the exemption, such as a credit against the judgment executed upon. However, this provision of the Act speaks only to the scope of an individual's homestead exemption

and does not address how that exemption may be satisfied. Rather, the Act clearly contemplates that the exemption will be satisfied from the proceeds of the execution sale by protecting these very proceeds from further execution. *See id.* § 78B-5-503(5)(b) ("The proceeds of any sale, to the amount of the exemption existing at the time of sale, is exempt from levy, execution, or other process for one year after the receipt of the proceeds by the person entitled to the exemption."). Plaintiffs' reading of the statute would render the protections afforded by this provision meaningless here, as a credit to a judgment owed to one creditor provides nothing for another creditor to execute or levy upon.

¶12    Moreover, Plaintiffs' interpretation of the Act directly contravenes the purpose of the homestead exemption, which is to "protect citizens and their families from the miseries of destitution." *P.I.E. Emps. Fed. Credit Union v. Bass*, 759 P.2d 1144, 1145 (Utah 1988). Allowing Plaintiffs to satisfy Halls' exemption with a credit toward a judgment he is demonstrably unable to pay would provide him no such protection. Indeed, Plaintiffs' interpretation in effect forces Halls to exchange his exemption for a credit against the Judgment. This result would render the homestead exemption a nullity and the legislature could not have intended such a result. Accordingly, we hold that the Act does not permit a creditor to satisfy a homestead exemption by giving the debtor "value" in the form of a credit to the judgment against the debtor.

¶13    Halls is entitled to a homestead exemption of $20,000 from the proceeds of the execution sale. Plaintiffs must pay the portion of their bid comprising Halls' homestead exemption in cash. Plaintiffs may not satisfy the homestead exemption by giving "value" in the form of a credit to the Judgment. We reverse the order of the district court and remand to the district court with instructions to grant Halls' motion for payment of the homestead exemption by Plaintiffs.

————————